

# United States Department of the Interior

OFFICE OF THE SECRETARY
Washington, D.C. 20240

## DEC – 6 2002

Personnel Bulletin No.  03-7     (752)

Subject:  Handbook on Charges and Penalty Selection for Disciplinary and Adverse Actions

The Department's Handbook on Charges and Penalty Selection for Disciplinary and Adverse Actions has been updated.  The update reflects the decision of the Supreme Court in <u>United States Postal Service v. Maria A. Gregory</u>, 122 S. Ct. 431 (2001) (<u>Gregory</u>).  The Federal Circuit held that, "as a matter of law, consideration may not be given to prior disciplinary actions that are the subject of ongoing proceedings challenging their merits."  The Supreme Court vacated (and remanded) the decision of the Federal Circuit, stating the Board has broad discretion in determining how to review prior disciplinary actions.

The Supreme Court decision also reminds us a limited review of previous disciplinary actions can occur if the Board examines the latter part of a progressive discipline scheme.  Specifically, the Court stated, "Because this termination was based on a series of disciplinary actions, some of which are minor, the Board's authority to review the termination must also include the authority to review each of the prior disciplinary actions to establish the reasonableness of the penalty as a whole."  Therefore, it is important to ensure all actions, regardless of whether or not they are initially appealable to the Merit Systems Protection Board (MSPB), are well-executed,  contain properly constructed charges and  specifications, and include a thorough <u>Douglas</u> factor analysis.

This Handbook will be made available on the DOI HRM website at
<u>http://www.doi.gov/hrm/guidance/curronly.htm</u>

*Carolyn Cohen*

Carolyn Cohen
Director, Office of Personnel Policy

Attachment:
DOI Personnel Handbook on Charges and Penalty Selection in Adverse and Disciplinary Actions

Inquiries:
Jodi B. Vargas, Office of Personnel Policy, 202-208-7764



DEFENDANT'S
EXHIBIT
14
05-1543 HHK

**U.S. DEPARTMENT OF THE INTERIOR
HANDBOOK ON CHARGES AND PENALTY SELECTION
FOR DISCIPLINARY AND ADVERSE ACTIONS**

**Part 1. Selecting and Framing the Charge
Part 2. Factors to Consider in Penalty Determination
Part 3. Table of Penalties**

**Part 1. <u>Selecting and Framing the Charge</u>**

When proposing certain disciplinary actions and all adverse actions,[1] a manager must give the employee[2] a written notice setting forth the specific reasons for the proposed action. In recent years, this specificity requirement has translated proposal notices into formal documents in which "charges" and their underlying "specifications" are set out. The Merit Systems Protection Board (MSPB), to which employees subject to adverse actions have a right of appeal, has issued a myriad of decisions concerning the proper way to select and frame a charge. This process is very complex and fraught with dangers for management officials. Even the experts often find the process confusing. Therefore, to ensure proposal notices contain charges that are fair, accurate and defensible, <u>it is essential for managers to consult closely with their employee relations specialists, who should consult with an attorney in the Office of the Solicitor (SOL), during the crucial stage of crafting a charge.</u> (<u>It is also imperative that personnelists/managers review any applicable union agreement prior to taking disciplinary or adverse actions to ensure contract compliance.</u>)

To assist human resources specialists and managers, the Department has compiled the following guidance and added a column to the Table of Penalties setting out possible charges. The Department cautions, however, that the following guidance, which is based on the most frequently

---

[1] For the purposes of this document, an "adverse action" is defined as a suspension for more than 14 days, a reduction in grade, a reduction in pay, removal, or a furlough of 30 days or less (5 U.S.C. § 7512). Adverse actions are appealable to the Merit Systems Protection Board (MSPB) or through a negotiated grievance procedure, if applicable. They are also appealable through the EEO mixed case process if discrimination is alleged. Also for the purposes of this document, "disciplinary actions" are actions taken for misconduct which include letters of reprimand and suspension for 14 days or less. Although not directly appealable to MSPB, disciplinary actions may be appealable through a negotiated grievance procedure, the administrative grievance procedure, the whistleblower process, or the EEO process if discrimination is alleged. Advance written notice is not normally required for lesser disciplinary actions (i.e., letters of warning and reprimand).

[2] Most employees, with limited exceptions, are covered by this guidance. Managers should consult their personnel offices with questions about the applicability of this guidance to particular employees.

encountered charging errors, is based on current precedent of the MSPB and United States Court of Appeals for the Federal Circuit. In recent years, the MSPB or Federal Circuit has overruled or modified what many believed to be well-established principles. Thus, the guidance articulated below is subject to change and managers should not consider it a replacement for consultation with their personnel offices and attorneys.

A.    The Agency Must Prove What it Charges

(1)    **Conduct a thorough investigation before selecting the charge.** Keep in mind it is not enough to have just a general idea of what occurred. The agency must prove all elements of the charged misconduct. Perhaps more importantly, an employee facing misconduct charges is entitled to know all of the facts upon which the agency has based its proposed disciplinary action (i.e., who, what, where, when and how). In this regard, it is crucial for management to investigate the matter before initiating action against the employee. This may include interviewing witnesses and other parties involved and/or obtaining written statements and other documentary evidence. The following are examples of types of documentation that may be appropriate depending on the circumstances: audit reports, witness statements, time and attendance records, sign-in or sign-out logs, copies of written communication to the employee. The results of the investigation will form the basis for whatever action is taken or proposed and will become part of the supporting documentation.

**Example:** The proposing official knows that an employee took money from the imprest fund. Without investigating further, the proposing official charges the employee with "theft." To sustain the theft charge, the agency must prove that the employee "intended to permanently deprive the owner of possession or use of the money." King v. Nazelrod, 43 F.3d 663, 667 (Fed. Cir. 1994). On appeal to the MSPB, the evidence revealed that the employee replaced the money she had taken. Thus, the agency could not prove an essential element of the theft charge - that the employee intended to permanently deprive the agency of the money - and lost the case. The agency could have avoided losing this case if it had collected all of the facts before choosing the charge. For example, even though the employee replaced the money, she could have been charged with "unauthorized use of government funds" or "unauthorized removal of government funds", charges which do not contain the element of "intent to permanently deprive."

(2)    **Make sure the facts support the charge.** A common problem in the charging process is to over-describe the misconduct, resulting in a charge unsupported by the facts. In addition to raising possible fairness issues, an overly descriptive charge can lead to an MSPB decision unfavorable to the agency.

**Example:** In one recent case before the Board, the agency charged the employee with "verbal abuse and physical threats made to another employee." Acox v. USPS, 76

2

M.S.P.R. 111, 113 (1997). At the prehearing conference, the administrative judge split the charge in two, finding the agency had charged the employee with (a) verbal abuse and (b) physical threats. Id. The judge then upheld the verbal abuse charge but found that the facts did not support the second charge of physical threats. Id. On a petition for review, the Board reversed, finding that an agency's charge may not be split when it is based on a single act. Id. at 114. Thus, the Board held that the agency had to prove that the acts of misconduct constituted both verbal abuse and physical threats. Id. The Board therefore found that the agency failed to sustain this charge. If the agency had labeled the charge only "verbal abuse of another employee," the Board indicated it would have sustained the charge.

In addition, keep in mind that a penalty will receive scrutiny where the Board did not sustain all of the agency's charges. However, the Board must still accord deference to the agency's penalty, particularly when it sustains the most serious charge(s). Where the Board finds the penalty is excessive for the sustained charge, it may mitigate only to the maximum reasonable penalty unless the agency has stated that a lesser penalty would be warranted for the charges sustained (see Lachance v. Devall and MSPB, 178 F.3d. 1246 [Fed. Cir., May 20. 1999]).

B.    Common Pitfalls in the Charging Process

(1)    **Avoid duplicative charges.** Another mistake agency charge writers make is to use a single act of misconduct as the basis for charges that are not factually or legally distinct from each other. Where a general charge such as conduct unbecoming a Federal employee is based on the same specification or set of facts as a more specific charge, such as AWOL or falsification, the Board will "merge" the charges, turning the two charges into one:

**Example:** In Gunn v. USPS, 63 M.S.P.R. 513 (1994), the agency charged the employee with (1) unacceptable conduct in violation of an agency's employee relations manual and (2) falsification of a leave form. Both charges stemmed from an incident in which the employee forged another employee's name on a leave form. The Board merged the general charge of unacceptable conduct into the more specific falsification charge on the ground the agency had not alleged any facts other than the falsification of the leave form to support the charge. The Board therefore held that this one act could not form the basis for the two charges. See also, Wolak v. Department of the Army, 53 M.S.P.R. 251 (1992) (Administrative Judge should have merged a "conduct unbecoming" charge into charges of (1) misuse of government time and property and (2) providing false statement and impeding an investigation). In another case, the agency charged the employee with (1) destruction of government property and (2) unauthorized use of bolt cutters. Delgado v. Department of the Air Force, 36 M.S.P.R. 685, 688 (1988). Again, both charges stemmed from a single act, which was that the employee used the bolt cutters to cut a chain securing a three-wheeled cycle in an attempt to move the vehicle. The Board held that since the charges were based on the same act the agency should have assigned only one charge.

3

**Note:** An agency may craft more than one charge arising from a single incident where proof of one of the charges does not necessarily constitute proof of the other charge(s). For example, an agency charged an employee with, among other things, (1) using her public office for private gain and (2) conversion of government property. Both charges were based on the employee's personal use of a Federal Express air bill containing the agency's account number. The MSPB held that the two charges did not merge because proving one charge did not automatically mean that the agency had proven both charges. Specifically, the MPSB noted that while the agency proved the second charge, it did not meet its burden of proof for the first charge (i.e., the agency had to also prove private gain to the employee). Mann v. HHS, 78 M.S.P.R. 1 (1998).

The consequence of an MSPB ruling which merges two charges into one is that the Board will determine the maximum reasonable penalty that may be imposed for the single sustained charge. Barcia v. Department of the Army, 47 M.S.P.R. 423, 430 (1991). In almost all cases that means the Board will mitigate the agency-imposed penalty and, for example, replace a removal action with a lengthy suspension.

(2)    **Omit charges that refer to a regulation or statute.**  This is a variation on the general rule that the charging official must make sure the facts fit the charge. In this instance, the problem arises when the charge contains a citation to a regulation or statute.

**Example:** If an employee makes unwanted sexual advances to a co-worker the charge in the proposal notice may read "Misconduct of a sexual nature in violation of 29 C.F.R. § 1604.11(a)." Under Board precedent, the charge has two elements: (a) misconduct of a sexual nature and (b) a violation of 29 C.F.R. § 1604.11(a), the regulation which contains the EEOC's definitions of sexual harassment. To sustain the action, the agency will have to prove that the employee's conduct met the regulatory definition of sexual harassment, a heavy burden which will require the agency to show that the employee's conduct created a "hostile work environment" or constituted "quid pro quo" harassment. Downes v. FAA, 775 F.2d 288 (Fed. Cir. 1985); Alsedek v. Department of the Army, 58 M.S.P.R. 220 (1993). In contrast, if the agency merely charges the employee with "misconduct of a sexual nature," the agency will have to prove only that the employee made unwanted advances to a co-worker that were sexual in nature. See also, Pittman v. Department of the Interior, 60 M.S.P.R. 365, 372 (1994) (Where agency charged employee with "removal of Government property without proper authorization in violation of 43 C.F.R. § 20.735-15", the agency had to prove not only that the employee removed government property from agency premises without proper authorization but that such action violated the cited regulation).

(3)    **Avoid hiding the charge in the specification.**  Often an employee's bad behavior seems to defy specific description or the employee has committed various acts of misconduct to which managers are reluctant to attach specific labels. In both situations, the proposing official may charge the employee with "inappropriate conduct". The proposing official will then set forth the particulars of the misconduct in the accompanying specifications. Under this scenario, the agency runs the risk of an Administrative Judge

4

defining the charge as something other than the agency intended. Except in very limited circumstances, this type of charge should be avoided. If a manager must use a general charge, "conduct unbecoming a Federal employee" may be an appropriate label as it connotes unseemly or distasteful conduct.

**Example:** The agency is investigating an allegation that an employee violated procedures for handling agency money. During the investigation, the employee tells a witness (and subordinate) that whatever the subordinate says to agency investigators can be used against him, the supervisor, and that the subordinate needs to be careful of what she says to the investigators. In the ensuing proposal notice, the agency charges the employee with "unacceptable and inappropriate behavior by a supervisor." Under MSPB precedent, an administrative judge must determine the essential elements of the charge. Hanner v. Department of the Army, 55 M.S.P.R. 113 (1992). Since the charge is ambiguous, the administrative judge must look to the specification to define it. In this case, the specification states that it appeared that the supervisor was trying to persuade the subordinate employee into not cooperating fully in the investigation. Based on this specification, the administrative judge may well characterize the charge as "Engaging in unacceptable and inappropriate behavior as a supervisor with the intent to impede or interfere with an investigation." In so doing, the administrative judge adds additional elements the agency must prove to prevail before the MSPB. Because the agency's facts do not support the charge, the agency loses. See Crouse v. Department of the Treasury, 70 M.S.P.R. 623 (1996); Crouse II, 75 M.S.P.R. 57 (1997), (case upon which this example is loosely based). For this particular example, had the agency charged the employee with "making an improper statement to a subordinate to be interviewed pursuant to an agency investigation", it may have had more success in defending itself. (Note: On appeal to the United States Court of Appeals for the Federal Circuit, the court reversed and remanded the MSPB's decision on the ground that the MSPB Administrative Judge had not properly interpreted the entire specification in giving content to the charge of "unacceptable and inappropriate behavior by a supervisor." LaChance v. MSPB, 147 F.3d 1367 [Fed. Cir. 1998]. The appeals court also ruled, however, that where an agency uses a vague, general label charge, an Administrative Judge must look to the specification to give content to the charge. Thus, if the specification had been drafted as narrowly as in the above example, the court likely would have upheld the AJ's determination that the agency had charged the supervisor with "engaging in unacceptable and inappropriate behavior as a supervisor with the intent to impede or interfere with an investigation.")

(4)    **Limit the information in the specification to the facts necessary to support the charge.** The specifications contain the factual basis for each charge. A good specification sets out only those facts necessary to prove each element of the charged misconduct (i.e., who, what, when and where). Other information, such as prior misconduct or mitigating information should be placed in the sections of the proposal and decision documents that discuss the appropriate penalty. Similarly, pertinent background information could be inserted into a "background" section. Organizing the proposal notice and decision letter in this way helps to avoid prehearing rulings in which the agency could be held to a higher standard of proof.

**Example**: <u>Charge</u>: "Claiming overtime for hours not worked"

<u>Specification (1)</u>: On December 11, 1996, your normal tour of duty was 7:30 a.m. to 4 p.m. Surveillance records for December 11, 1996, reveal that you arrived at your duty station at 7:30 a.m. and left for the day at 2:20 p.m. You did not take a lunch break that day so you were entitled to claim barely 7 hours of regular time. Instead, you claimed 8 hours of regular time plus three hours of overtime. (This is an example of a well-drafted specification.)

<u>Background</u>: In this section the proposing official could discuss any pertinent background information.

<u>Penalty Section</u>: The proposing official could discuss the employee's record, explanation for over-claimed time and should address the <u>Douglas</u> factors.

(5)    **Clearly delineate between the charge and each specification.** As discussed above, an agency must prove all elements of its charge. Each specification should include enough information to meet all elements of the charge. If the agency proves only one of its specifications, MSPB will sustain only that charge. <u>Burroughs v. Department of the Army</u>, 918 F.2d 170, 172 (Fed. Cir. 1990); <u>Avant v. Department of the Air Force</u>, 71 M.S.P.R. 192 (1996); <u>Payne v. USPS</u>, 72 M.S.P.R. 646, 649 (1996). To avoid adding elements to a charge, the charge should be clearly labeled in the manner set forth under Item (4), above, and each specification should likewise be labeled.

(6)    **Avoid reference to the word "intentional" in the charge or specification.** Using the word intentional may unnecessarily add to the agency's burden in having to prove "intent". For example, the agency will have a lesser burden of proof in sustaining a charge of "misusing the government credit card for personal use" versus a charge of "intentionally misusing the government credit card for personal use" if the employee argues he did not realize he was making the purchase with his government card or that he was prohibited from using the government credit card for the particular purchase. Therefore, reference to "intentional" misconduct should be carefully scrutinized and should not be used without consultation with an employee relations specialist and SOL attorney.

In conclusion, it is important to keep in mind that if a charge is not properly framed the agency cannot later modify or correct the proposal letter already given to the employee. Rather, management must begin the process over again or it is likely to be reversed. In this regard, human resources specialists, managers and supervisors will find it helpful to first carefully craft a charge and write it out. Later, the charge writer should review what has been written, with an eye toward determining whether each specification fits under the charge and that the charge does not create an unnecessary burden of proof. Also, the proposal letter should be looked at from the standpoint of the employee: will he or she understand what the charge is for and what specific act or acts of misconduct he or she must defend against? If not, modifications can then be made as appropriate prior to issuing the proposal letter to the employee. Once the proposal letter is issued, additional matters (i.e., instances of misconduct) not included in the proposal letter may not be added to the decision letter.

## Part 2. <u>Factors to Consider in Penalty Determination</u>

After the supervisor has determined that there is sufficient basis for taking action and has framed a charge or charges fully supported by the available evidence, he/she must choose the specific penalty. At this point, it is wise to give full consideration to all remedies that have any likelihood of success in resolving the problem, whether they are disciplinary or nondisciplinary, formal or informal.

Normally, the management officials most familiar with the circumstances of the case (often the employees' first-line supervisor) and agency policy are in the best position to decide the appropriate penalty for a particular charge, although <u>it is essential to confer with an employee relations specialist and SOL attorney</u> at this stage. In making its selection of an appropriate penalty, management must exercise responsible judgement, to ensure that the penalty is proportional to the offense.

a.    <u>Selecting the Penalty</u>

In selecting a penalty, management should take into account all of the specific circumstances of the case including any mitigating factors. Deciding officials should ensure, to the extent possible, that employees who commit similar offenses are treated consistently. In <u>Curtis Douglas v. Veterans Administration</u>, 5 M.S.P.R. 280 <u>(Douglas)</u>, however, the MSPB specified a number of factors that agencies should consider when deciding on appropriate penalties. Application of these factors to individuals, even those who have committed similar offenses, may result in differing penalties. Thus, agencies should avoid a mechanistic approach to penalty determination and conduct a thorough analysis of the <u>Douglas</u> factors for each individual charged with misconduct. The Douglas factors include:

(1)    The nature and seriousness of the offense and its relation to the employee's duties, position, and responsibilities;

(2)    The employee's job level and type of employment, including supervisory or fiduciary role;

(3)    Any past disciplinary record;

(4)    The past work record, including length of service, performance, ability to get along with fellow employees, and dependability;

(5)    The effect of the reasons for action on the employee's ability to perform satisfactorily and on supervisors' confidence;

(6)    Consistency of the penalty with those imposed on other employees for the same or similar offenses;

7)    Consistency of the penalty with any applicable agency table of penalties;

7

(8)    The notoriety of the offense or its impact on the agency's reputation;

(9)    The clarity with which the employee was on notice of any rules violated in committing the offense or had been warned about the conduct in question;

Any potential for rehabilitation;

Mitigating circumstances surrounding the offense; and

(12)    The adequacy and efficacy of alternative sanctions to deter such conduct in the future by the employee or others.

There is no requirement that management demonstrate it has considered all potential mitigating or aggravating factors before selecting its penalty. However, the penalty may be questioned if there are demonstrably relevant issues it does not address. MSPB case law suggests that it is wise for agencies to cite the factors they considered in penalty selection in both the proposal and decision letters. Therefore, the proposing official should address each Douglas factor and specifically cite and discuss those which are particularly relevant to penalty selection, and address any relevant mitigating factors. Including this information in the proposal will also enable the employee to prepare and present any statement(s) he/she may wish regarding the charge(s), the Douglas factor analysis and the proposed penalty. In the decision letter, the deciding official should reference the Douglas factor analysis as developed by the proposing official and the employee's statement, if any, before presenting his/her judgement on the factors and why they do (or do not) support the proposed penalty.

Management should not interpret the last Douglas factor as an indication that they may choose a particular penalty primarily for its value as an example or warning to other employees, since third parties (such as MSPB, FLRA, Arbitrators, OHA, EEOC, etc.) generally do not accept this as a sole basis for penalty selection.

b.    Consideration of Employee Response

Employees against whom a disciplinary or adverse action is being proposed are given the right to respond to the charges orally and/or in writing, generally to the deciding official. Managers receiving a response must determine if the information presented serves as a basis for mitigating and/or reconsidering the appropriateness of the proposed penalty (i.e, does the information change anything?). It is recommended that deciding officials summarize any response provided and include the summary in the decision letter along with a discussion on what, if any, mitigating value the response is determined to have.

Example #1: A 2-day suspension is proposed for excessive tardiness which occurred over a 30-day period. During the oral response, the employee states that her daycare center temporarily altered its hours of operation due to an emergency (she provides written documentation from the center verifying this). Therefore, although she dropped off her child as soon as the center opened she was still unable to arrive to the office on time. The center is now back to normal operating hours and she has not been late to work since. In the decision letter, the deciding official summarizes the employee's response and determines the information she provided serves as a

mitigating factor. After addressing the other pertinent Douglas factors (such as her past work record and disciplinary record), the deciding official reduces the penalty to a Written Reprimand. Example #2. A 2-day suspension is proposed for excessive tardiness which occurred over a 30-day period. However, in this case the employee continues to arrive late to work and states it is due to heavy rush hour traffic. The record shows the employee has been advised by the supervisor on several occasions that she must leave for work earlier so she can get to work on time but she fails to do so. In the decision letter, the deciding official summarizes the employee's response and determines the information she provided does not serve as a basis for mitigating the penalty. After addressing other pertinent Douglas factors, she is suspended for 2 days.

Note that, in Stone v. Federal Deposit Insurance Corporation, 179 F.3d 1368, 13 75 (Fed. Cir. 1999), the Agency removed the employee for submitting false requests for leave. During the period in which the deciding official was deciding the penalty, the proposing official and another employee sent him *ex parte* memoranda recommending removal. The employee argued that the memoranda improperly introduced new, highly prejudicial charges and information against him and that this violated his constitutional right to due process and should automatically void his removal. The United States Court of Appeals for the Federal Circuit held that the introduction of new and material information[3] by means of *ex parte* communications to the deciding official undermines the employee's constitutional due process guarantee of notice (both of the charges and of the evidence) and the opportunity to respond. If the deciding official receives evidence during the decision-making stage that meets the new and material test, *be sure to give the employee the chance to respond to it*, even if it means extending the deadline for issuing a decision. Even better, if the deciding official receives ex parte written materials, counsel the individual to return it to the sender unread and document its return in the file. If necessary, consider rescinding the original proposal and starting the process over again.

b.    Reliance on Past Disciplinary Record

Agencies may rely on past formal disciplinary actions (letters of reprimand or higher) without again proving the reasons for or appropriateness of the earlier actions if:

(1)    The employee was informed in writing of the action(s);

(2)    The employee had an opportunity to dispute the action(s), for instance, through a negotiated or agency grievance system; and

---

[3]In deciding whether new and material information has been introduced by means of *ex parte* contacts, the Board should consider the facts and circumstances of each particular case. Among the factors that will be useful for the Board to weigh are: [1]whether the *ex parte* communication merely introduces `cumulative' information or new information; [2]whether the employee knew of the error and had a chance to respond to it; and [3]whether the *ex parte* communications were of the type likely to result in undue pressure upon the deciding official to rule in a particular manner. Ultimately, the inquiry of the Board is whether the *ex parte* communication is so substantial and so likely to cause prejudice that no employee can fairly be required to be subject to a deprivation of property under such circumstances.

(3)    The action(s) was made a matter of record.

If agency policy or the letter informing the employee of the action limited its later use to some specific period of time, e.g., a letter of reprimand which is withdrawn after two years, it may not be considered in the imposition of subsequent discipline after that time has elapsed. Also, if the action was further reviewed by a higher level agency official and/or third party, it must have been upheld. If a challenge is pending on a prior disciplinary action cited by management, the Board or an arbitrator may make a limited scope review of that prior action. Third parties have generally upheld reliance on prior discipline that meets these standards, even if it was imposed for reasons unrelated to the current misconduct. See U.S. Postal Service v. Maria A. Gregory, 122 S. Ct. 431 (2001) and Bruce C. Bolling v. Department of Air Force, 9 M.S.P.R. 335 (1981).


c.    Dual Penalties

Dual penalties for a single act of misconduct, e.g., suspension and demotion, may be appropriate under certain circumstances. (For example, an employee with fiduciary duties is charged with taking government funds. In addition to receiving a suspension, the employee is also reassigned [possibly demoted] to another position with no fiduciary responsibility). As with other penalty selections, when assessing whether to impose dual penalties, an agency should give careful consideration to the nature and seriousness of the employee's previous disciplinary record, whether the penalties fall within tolerable limits of reasonableness under the Douglas factors listed above, the agency's table of penalties and other pertinent guidance, and whether, overall, the actions are being taken for such cause as would promote the efficiency of the service. Third party adjudicators have upheld assignment of dual penalties under certain circumstances, and the MSPB has mitigated removals to dual penalties in a number of cases.

### Part 3.  Table of Penalties

This Table is intended as a guide for your use in determining the most appropriate charges and penalties for behavior(s) or action(s) which warrant corrective/remedial action and helps to ensure a relative consistency of penalties for like offenses.  Users should consider the *Nature of Offense* column as a listing of examples of general categories of offenses and **not use it as the specific terminology in framing charges**; it is not all-inclusive and is not intended to address every conceivable disciplinary situation.  Similarly, users should consider the *Possible Charges* column as listing only some potential charges; it is not an exhaustive list and other charges may be more appropriate.  Managers should be careful to avoid force-fitting an offense or charge into an existing category.  Rather, the Table is to be used as a guide for selecting a charge and penalty that fits a particular situation.

This Table does not replace supervisory judgement, as certain circumstances may warrant lesser or more severe penalties, and does not, except in limited circumstances, require specific penalties.  Charge writers should explain a need for some disciplinary action in the proposal letter.  For example, show that the conduct affected the Agency's ability to conduct its operations efficiently.  While supervisors generally should attempt to select the least severe penalty they believe necessary to correct the misconduct and to discourage repetition, supervisors retain full authority (except in limited circumstances) to set penalties, as they deem appropriate, based on the particular circumstances and specifications of the offense.  It should be noted that, under 5 CFR 752, Subpart F, if suspending an SES employee, the suspension must be for more than 14 days (i.e., appealable to MSPB) and approved by the Executive Resources Board (ERB).  Also note that for some serious offenses, a reduction-in-grade may be an appropriate alternative to a longer suspension or removal.  Proposing and deciding officials should also be aware that suspension of more than 14-days, removal and reduction-in-grade penalties invoke a right of appeal to the MSPB; letters of reprimand and suspensions of 14-days or less do not.  However, if an adverse action is based on a series of disciplinary actions, the authority of MPSB to review the adverse action includes the authority to review any prior disciplinary action to establish the reasonableness of the penalty as a whole.  Therefore, it is important to ensure all actions, regardless of whether or not they are initially appealable to MSPB, are well-executed, contain properly constructed charges and specifications, and include a thorough Douglas factor analysis (see below).  Further, the employee may have other appeal rights including the right to file a grievance under the Department's administrative grievance procedure, a negotiated grievance procedure, or the EEO process if discrimination is alleged.

It is very important that the proposing and deciding official(s) consider and/or address each of the Douglas factors.  Failure to address the Douglas factors could result in the mitigation of penalties by the MSPB.  Thus, it is important to cite the factors considered in penalty selection (as well as the specifications of the charge and evidence) in both the proposal and decision letters.  The decision letter should also state the reason(s) for judgement (i.e., justification of the proposal and decision).  Including this information in the proposal and decision letters will enable managers to be more fully prepared to present their case should it go before MSPB or other third party.  It also serves to alert employees to penalty issues and, therefore, provides an opportunity for the employee to address them before the penalty is imposed.

The Table lists only formal disciplinary actions (i.e., those which become a matter of record in the employee's official personnel folder). It does not mention oral warnings, counseling letters, and similar actions which are considered informal disciplinary actions and may be more appropriate for correcting minor offenses. The *First Offense* column, therefore, refers to the first offense for which formal discipline is being administered, although it may not be the first time a violation has occurred.

It is the policy of the Department that discipline be administered in a constructive and progressive manner, whenever practicable. (Note that offenses need not be identical in order to support progressively more severe action against an employee). However, the penalties suggested in the Table are guidelines only; nothing precludes management from proposing and then imposing no penalty, or a lesser or more severe penalty than that offered by the Table, as circumstances warrant. Such circumstances, however, should be fully documented in the decision letter. (Note that a deciding official cannot impose a more severe penalty than that originally proposed in the proposal letter, nor can the decision letter expand on the matters contained in the proposal letter so as to limit the opportunity to respond fully to these charges.)

## TABLE OF PENALTIES

| NATURE OF OFFENSE | FIRST OFFENSE | SUBSEQUENT OFFENSES | POSSIBLE CHARGES |
|---|---|---|---|
| 1. An unauthorized absence from duty resulting in AWOL; Excessive tardiness; Leaving work before the end of duty; Taking excessively long coffee or lunch breaks. (See Note 1.) | Written Reprimand to 5-Day Suspension | Written Reprimand to Removal | Unauthorized absence from duty; Tardiness; AWOL; Excessive tardiness Failure to work a full tour of duty. |
| 2. Misuse of leave; Failure to adhere to leave usage requirements; Failing to request leave in accordance with regulations; Failing to provide administratively acceptable medical certification to justify sick leave requests; excessive unscheduled absences. (See Note 1.) | Written Reprimand to 5-Day Suspension | Written Reprimand to Removal | Misuse of leave; Failure to adhere to proper procedures when requesting leave; Unsatisfactory attendance; Failure to supply proper medical certification. |
| 3. Unprofessional or discourteous conduct toward supervisors, co-workers or the public; Use of foul language; angry outbursts; disrespectful comments; provoking quarrels; inappropriate remarks; use of abusive language or offensive language; quarreling or inciting to quarrel (See Note 2.) | Written Reprimand to 5-Day Suspension | 5-Day Suspension to Removal | Discourteous conduct; Disrespectful conduct; Disruptive conduct; Use of foul (also vulgar, obscene, profane or abusive) language; Abusive conduct. |

| NATURE OF OFFENSE | FIRST OFFENSE | SUBSEQUENT OFFENSES | POSSIBLE CHARGES |
|---|---|---|---|
| 4. Insubordination, refusal to comply with proper orders, or disregard of directives or regulations. Refusing to do assigned work; failure to do assigned work; carelessness in performing assigned work. (See Notes 3 and 3a.) | Written Reprimand to 14-Day Suspension | 5-Day Suspension to Removal | Unprofessional or disrespectful conduct toward a supervisor; Failure to follow a supervisor's instructions; Failure or refusal to perform assigned duties as directed; Failure to meet set deadlines |
| 5. Physical fighting, threatening bodily harm to another, or physical resistance to responsible authority; Creating a disturbance (See Note 4) | Written Reprimand to Removal | 5-Day Suspension to Removal | Creating a disturbance; Engaging in disruptive conduct; Engaging in abusive conduct; Striking a co-worker; Striking a supervisor; Pushing another individual |

| NATURE OF OFFENSE | FIRST OFFENSE | SUBSEQUENT OFFENSES | POSSIBLE CHARGES |
|---|---|---|---|
| 6. Reporting for duty or being on duty while under the influence of alcohol or drugs; Inappropriate consumption of alcohol while on duty (See Notes 5, 5a and 5b). | Written Reprimand to Removal | 14-Day Suspension to Removal<br><br>see Note 5c | Drinking alcoholic beverages while on duty; Performing while under the influence of intoxicants or drugs; On duty while under the influence of intoxicants or drugs |
| 7. Sale or transfer of controlled substances on Government premises or during duty hours. (See Note 5, 5b). | Written Reprimand to Removal | 14-Day Suspension to Removal | Unauthorized use or possession of a controlled substance on government premises; Transferring or selling controlled substances on government property. |
| 8. Violation of the Departmental Drug Free Workplace policy including possession or use of illegal drugs, positive drug test results, declining to provide, falsifying or tampering with specimen for drug testing, or other finding of illegal drug use as defined in 370 DM 792, 10.12 (see Notes 5, 5a, 5b). | Written Reprimand to Removal | Removal*<br><br><br><br>*see Note 5c | Consumption of illegal drugs; Performing while under the influence of an illegal drug; On duty while under the influence of an illegal drug; Attempting to change a urine specimen; Refusing to provide a urine specimen for drug testing; Testing positive for illegal drugs. |

| NATURE OF OFFENSE | FIRST OFFENSE | SUBSEQUENT OFFENSES | POSSIBLE CHARGES |
|---|---|---|---|
| 9. Damaging or destroying government property including, but not limited to, computers, facsimile machines, telephones, copying machines, tools, desks, office furniture, lights, vehicles; misusing such government property. (See Note 6 and 12). | Written Reprimand to 5-Day Suspension | 5-Day suspension to Removal | Misuse or abuse of government equipment or property; Damaging government property; Unauthorized use of government property; Failure to follow proper procedures in handling government property; Carelessness in handling government property. |

| NATURE OF OFFENSE | FIRST OFFENSE | SUBSEQUENT OFFENSES | POSSIBLE CHARGES |
|---|---|---|---|
| 10.  Using a government vehicle, including automobiles, boats, snow machines, etc., for personal business or unauthorized purposes (see Note 12). | Written Reprimand to 14-Day Suspension<br><br>Note:  31 U.S.C. 1349(b) provides that any officer or employee who "willfully" uses or authorizes use of Government passenger motor vehicle or aircraft for other than official purposes will be suspended for not less than 30 days and will be suspended for a longer period or removed if circumstances warrant. | 5-Day Suspension to Removal | Misuse of a government vehicle; Use of a government vehicle for unauthorized purpose. |
| 11. Failure to observe safety practices, including failure to use safety equipment such as seat belts, eye protection devices, and protective hearing devices; | Written Reprimand to Removal | 5-Day Suspension to Removal | Failure to observe safety practices; Carelessness; Endangering oneself; Engaging in unsafe work practices |
| 12. Putting oneself or others at risk through careless use of government equipment such as machine shop tools, printing equipment, motor vehicles, firefighting equipment, law enforcement equipment. | Written Reprimand to Removal | 5-Day Suspension to Removal | Putting a co-worker in danger; Engaging in unsafe work practices; Failure to observe safety practices; Unsafe use of government equipment; Inattention to duty. |

| NATURE OF OFFENSE | FIRST OFFENSE | SUBSEQUENT OFFENSES | POSSIBLE CHARGES |
|---|---|---|---|
| 13. Misuse of the Internet in violation of the DOI Internet Use Policy dated 5/23/97 or successor policies; Misuse of electronic mail; Visiting websites or downloading material from the Internet during duty time for non-official use; Using electronic mail for unauthorized purposes; Using Government office equipment (i.e., telephone, copy machine, fax machine) for unauthorized purposes. (See Note 6a and 12) | Written Reprimand to 5-Day Suspension  Note: Persons who send or download obscene or sexually related materials over the e-mail or visit obscene websites may be subject to harsher penalties for a first offense, including removal. | Written Reprimand to Removal | Misuse of government office equipment; Improper use of government computer equipment; Misuse of the Internet; Misuse of the e-mail system. |
| 14. Taking government equipment; Taking government funds; Using a co-worker's personal property without permission; Taking money from another; Stealing; Improper acceptance of reimbursement for such things as per diem, mileage and airplane tickets. (See Note 13). | Written Reprimand to Removal | 14-Day Suspension to Removal | Unauthorized possession of Government property; Unauthorized use of property of other; Misuse of government property; Misuse of a co-worker's personal property; Misuse of a Supervisor's property; Improper acceptance of government money; Filing an inaccurate request for reimbursement. |

18

| NATURE OF OFFENSE | FIRST OFFENSE | SUBSEQUENT OFFENSES | POSSIBLE CHARGES |
|---|---|---|---|
| 14a. Failure to pay the full account balance on the Government-issued charge card; using a government charge card for personal/unauthorized purchases (See Note 7, 12) | Written Reprimand to Removal | Written Reprimand to Removal | Misuse of a government-issued charge card; Failure to pay the full account balance on a government-issued charge card |
| 15. Prohibited discriminatory practice in any aspect of employment or application for employment. Includes failure to prevent or curtail discrimination of a subordinate when the supervisor knew or should have known of the conduct proscribed by anti-discrimination statutes and/or the Department's policy of "Zero Tolerance of Discrimination" issued February 10, 1997, or as amended. Proscribed conduct also includes, but is not limited to, conduct or remarks that are disparaging, critical or hostile of person(s)' race, color, religion, national origin, age, sex, disability or sexual orientation; racial, ethnic or religious harassment; creating a hostile work environment. (See Note 8 and 9). | 1-Day Suspension to Removal | 14-Day Suspension to Removal | Failure to enforce an element of Department's "Zero Tolerance of Discrimination" policy; Failure to follow an element of Department's "Zero Tolerance of Discrimination" Policy; Disrespectful or inappropriate conduct based on race, color, religion, sex, national origin, age, disability, or sexual orientation; Verbal abuse; Making racist statements; Failure to follow an element of Department's policy on Sexual Orientation. |

| NATURE OF OFFENSE | FIRST OFFENSE | SUBSEQUENT OFFENSES | POSSIBLE CHARGES |
|---|---|---|---|
| 16. Misconduct of a sexual nature that includes, but is not limited to, unwelcome sexual remarks, offensive jokes, offensive sexual banter, unwelcome physical touching; unwanted sexual advances. (See Note 8 and 10). | 1-Day Suspension to Removal | 14-Day Suspension to Removal | Misconduct of a sexual nature; Making unwanted sexual advances; Disrespectful conduct; Abusive conduct; Making remarks of a sexual nature; Failure to follow an element of the DOI Policy on Sexual Harassment. |
| 17. Discrimination based on political affiliation or marital status or participation in any "prohibited personnel practices" as outline in 5 U.S.C. § 2302 (b); Requiring subordinate to violate rules or regulations; Coercion in deprivation of an employee's rights; Reprisal, intimidation, retaliation, or interference for use of administrative or judicial procedures, or for EEO or labor relations activities, or for engaging in whistle blower activity. (See Note 8). | 1-Day Suspension to Removal | 14-Day Suspension to Removal | *Consult with Personnel Office and Solicitor's Office* |
| 18. Making irresponsible or disrespectful statements against other employees, supervisors, other officials or subordinates. | Written Reprimand to Removal | 5-Day Suspension to Removal | Verbal abuse; Use of disrespectful language; Abusive language. |

| NATURE OF OFFENSE | FIRST OFFENSE | SUBSEQUENT OFFENSES | POSSIBLE CHARGES |
|---|---|---|---|
| 19. Violations of ethics regulations and statutes applicable to Federal employees (Standards of Conduct); Violations of the Hatch Act (see Note 11). | 1-Day Suspension to Removal | 14-Day Suspension to Removal | *Consult with Personnel Office, Solicitor's Office and Ethics Office* |
| 20. Violations of criminal statutes, both Federal and state (where there is a nexus between the employee's criminal activity and the efficiency of agency operations). | 1-Day Suspension to Removal | 14-Day Suspension to Removal | *Consult with Personnel Office, Solicitor's Office and Ethics Office* |
| 21. Falsification, misrepresentation, or concealment of material fact in connection with work, or in any record or investigation or other proper proceeding, including financial disclosure statements, travel vouchers, time and attendance records. | Written Reprimand to Removal | 5-Day Suspension to Removal | Misrepresentation; Altering time and attendance records; Altering travel vouchers; Claiming overtime for hours not worked.<br><br>*Consult with Ethics Office for charges related to financial disclosure statements* |

| NATURE OF OFFENSE | FIRST OFFENSE | SUBSEQUENT OFFENSES | POSSIBLE CHARGES |
|---|---|---|---|
| 22. Falsification, misrepresentation or omission of fact in connection with application for employment or other personal history record: | | | Misrepresentation; concealment of information |
| a. With respect to a material fact or point which could have adversely affected the selection process. | 10-Day Suspension to Removal | 30-Day Suspension to Removal | |
| b. With respect to a less important fact or point which would not have adversely affected the selection process. | Written Reprimand to 5-Day Suspension | 10-Day Suspension to Removal | |
| 23. Failure to respond or cooperate with EEO investigations, Office of Special Counsel inquiries or other administrative inquiries; Failure to provide requested documents. | Written Reprimand to Removal | 7-Day Suspension to Removal | Failure to follow orders: failure to comply with directives |
| 24. Off duty misconduct such that the employee is unable to fulfill his/her job responsibilities; Off-duty misconduct of such significance that there is adverse effect on the reputation of the Bureau or Department; Off duty misconduct unbecoming a Federal employee. | 1-Day Suspension to Removal | 7-Day Suspension to Removal | *Consult with Personnel Office and Solicitor's Office* |

| NATURE OF OFFENSE | FIRST OFFENSE | SUBSEQUENT OFFENSES | POSSIBLE CHARGES |
|---|---|---|---|
| 25. Promotion of, participation in, or assistance in operation of gambling on duty or on Government premises. (See Note 12). | Written Reprimand to Removal | 7-Day Suspension to Removal | Gambling on agency premises; operating or promoting gambling activity on-duty or on Government premises. |

Notes:

370 DM 630 has requirements and guidance in this area. The range of penalties for subsequent offenses, including removal from government service, may also be applied for a first offense when an absence is extended, the failure to adhere to leave procedures is flagrant, or the circumstances are otherwise particularly burdensome to management.

2      5 U.S.C. 7503(a) permits suspension of 14 days or less of any employee with four documented instances of discourteous conduct toward the public within a one-year period as confirmed by an immediate supervisor, or any other pattern of discourteous conduct.

3i     370 DM 430 prescribes procedures applicable for dealing with unacceptable performance.

3a     While not listed as a "possible charge", "insubordination" (i.e., the explicit refusal to comply with an order) may be the appropriate charge in some cases . However, caution should be used when charging employees with insubordinate behavior as the agency will have the burden of proving the employee willfully and intentionally disregarded supervisory directives.

4      Proposing officials should use caution if charging an employee who has engaged in the type of conduct described with "making threats" or "threatening behavior." This is due to the stringent legal test the United States Court of Appeals for the Federal Circuit has crafted to analyze whether an employee had made a threat. See Metz v. Department of Treasury, 780 F.2d 1002 (Fed. Cir. 1986). Specifically, the appeals court held that the MSPB must consider the following five evidentiary factors in deciding whether an employee threatened his supervisors or co-workers:

(1) The listener's reactions;
(2) The listener's apprehension of harm;
(3) The speaker's intent;
(4) Any conditional nature of the statements; and
(5) The attendant circumstances.

Since Metz, the MSPB has not hesitated to overturn an agency decision where it has determined that, under the five-part test, the agency did not prove the employee made a threat. Therefore,

23

the Department cautions against charging an employee with "threatening conduct," "making threats" or any other charge that includes the word "threat" in it, unless the threatening conduct can be proven under the five-part test described above.

5.   Actions involving these offenses must assure that the requirements of 370 DM 792 in offering counseling or rehabilitative assistance are met; however, referral to an employee assistance program (EAP) does not preclude management from taking appropriate disciplinary action.

5a.   When the substance is prescribed by an appropriate medical authority and used accordingly, it would not be an offense.

The illegal drugs currently tested for, as defined in 370 DM 792, include: marijuana, cocaine, opiates, amphetamines and phencyclidine (PCP). However, the Department is authorized to test for any illegal drugs as deemed necessary.

5b.   Refer to 370 DM 792, DOI Handbook on the Department of Transportation (DOT) Alcohol and Drug Testing Program, and DOI Federal Railroad Administration (FRA) Supplement for further and more specific guidance, currently found at http://www.doi.gov/sees/drug.html.

5c.   370 DM 792, 10.12 requires mandatory initiation of removal from service for a second offense of failing to refrain from illegal drug use. Refer to the DOI Handbook on the DOT Alcohol and Drug Testing Program and DOI Federal Railroad Administration (FRA) Supplement for further guidance on specific actions required to be taken against employees covered under these programs.

6.   See also 41 CFR Part 114 regarding property management.

6a.   Refer to 410 DM 2, Limited Personal Use of Government Personal Property for further information on authorized use of certain Government property, including authorization for certain limited personal uses.

7.   Refer to Financial Administration Memorandum (FAM) 2000-010 for further information and instructions on Resolving Delinquencies on Individually-billed Travel Card Accounts and the Department's Integrated Charge Card Program Guidelines issued May 22, 2000. Note that where it is believed the misuse of a government credit card was intentional and may constitute fraud, the Office of the Inspector General must be contacted per these guidelines.

8.   There may be some cases where the conduct at issue was clearly unintentional, although still inappropriate and contrary to the Department's Zero Tolerance Policy. In those cases managers may wish to consider a penalty at the lower end of the range and/or mandatory training as appropriate.

9.   Action may be taken regardless of whether there was a final agency decision "finding" discrimination or a settlement action.

10.   See 29 CFR 1604.11(a) for detailed definition of sexual harassment.

24

11    See 43 CFR Part 20 and 5 CFR Part 2635 for specific regulations.  Also see Hatch Act references: 5 USC Sections 7321-7326 and 5 CFR Parts 733 and 734.  In these cases, it may also be advisable to contact the agency or departmental Ethics Officer.

12.    Before taking action, supervisors/managers should determine whether the employee in question was made aware of agency policy prior to the alleged misconduct.

13.    Executive Branch departments and agencies are authorized by 31 USC Section 1353 to accept reimbursement for travel expenses by outside sources.   Employees are required to complete form DI-2000 prior to DOI acceptance of travel payments from outside sources (form must be approved by an ethics official prior to travel).

Revised:        August 2002