UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MICHAEL L. TURNER,

            Plaintiff,

   v.

DEPARTMENT OF THE INTERIOR, *et al.*,

Civil Action No. 05-1543 (HHK)

MEMORANDUM OPINION

This action is before the court for consideration of defendants' motion for summary judgment. Having reviewed the motion, plaintiff's opposition thereto, and the record of this case, the court concludes that the motion should be granted.

I. BACKGROUND

The United States Park Police ("Park Police") appointed plaintiff, a Black man, as a Park Police officer on October 7, 2001. Compl. at 1 & Ex. 2 (March 5, 2004 Memorandum from B.J. Holmes, Jr., Acting Chief) at 2;[1] Plaintiff['s] Opposition to Summar[]y Judgment Motion ("Pl.'s Opp'n") [Dkt. #19], Ex. 1 (Appointment Affidavit). The appointment was subject to completion of a one-year probationary period. Plaintiff['s] Opposition to Summary Judgment Motion ("Pl.'s Surreply") [Dkt. #22], Ex. 3 (Notification of Personnel Action effective October 7, 2001). Park

---

[1] Plaintiff attaches two unnumbered exhibits to his complaint: the first is a copy of the Merit Systems Protection Board's June 20, 2005 Final Order, and the second is the March 5, 2004 Memorandum regarding plaintiff's removal from the Park Police. *See* Compl. The Court designates the former as "Ex. 1" and the latter as "Ex. 2."

1

Police recruits must complete basic training at the Federal Law Enforcement Training Center ("FLETC"), which is operated by the Department of Homeland Security. Compl., Ex. 2 at 2. "Successful completion of the training program was a condition of employment as an Officer with the United States Park Police." Compl., Ex. 2 at 2. "FLETC is an independent federal entity under a different federal agency," and, therefore, the Park Police "plays no role in determining whether its recruits have successfully completed basic police training." Memorandum of Points and Authorities in Reply to Plaintiff's Opposition to Defendants' Motion for Summary Judgment ("Defs.' Reply"), Ex. 12 ("Davis Decl.") ¶ 2.

Plaintiff began training at FLETC in 2001 as a member of integrated recruit class number USPP I-201. Davis Decl. ¶ 12. He left FLETC in January 2002 after sustaining an injury to his right hand, and resumed training in July 2003 as a member of recruit class number USPP I-304. Memorandum of Points and Authorities in Support of Defendants' Motion for Summary Judgment ("Defs.' Mot."), Ex. 3 (January 8, 2002 Memorandum from B.J. Holmes, Jr., Dep. Chief, Park Police, regarding plaintiff's reassignment) & Ex. 4 (July 24, 2003 letter from T.C. Chambers, Chief, Park Police).

On November 8, 2003, plaintiff was involved in a physical altercation with two White Park Police recruits. Compl. at 1 & Ex. 2 at 2. FLETC officials investigated the incident and determined that plaintiff committed an act of violence (assault) against a fellow recruit, Compl., Ex 2 at 2, and FLETC deemed plaintiff's conduct a violation of Office of Personnel Management regulations and FLETC Directives regarding student misconduct and workplace violence. Defs.' Mot., Ex. 7 (November 13, 2003 letter from B.W. Smith, Dept. Asst. Dir., Office of Training Management, FLETC). Consequently, FLETC removed plaintiff from recruit class USPP I-304

2

and dismissed him from FLETC training. *Id*. The Park Police, in turn, took action to remove plaintiff because he failed to complete successfully the required basic police training at FLETC. Defs.' Mot., Ex. 8 (November 17, 2003 Memorandum from B.S. Beam, Dep. Chief, Acting Commander, Serv. Div., Park Police, regarding plaintiff's proposed removal).

After considering plaintiff's oral and written responses to the proposed removal, the Park Police removed plaintiff effective March 13, 2004. Compl., Ex. 2 at 2, 5; Pl.'s Surreply, Ex. 2 (Notification of Personnel Action effective 03/13/04). Plaintiff challenged his removal before the Merit Systems Protection Board ("MSPB"), and the matter was not resolved to his satisfaction. *See* Compl. at 1 & Ex. 1 (June 20, 2005 Final Order, MSPB Dkt. No. DC-0752-04-0413-I-1).

In this action, plaintiff, proceeding *pro se*, alleges that the Park Police improperly removed him because of his race.[2] Compl. at 1. He demands back pay and damages totaling $25 million. *Id.* Although plaintiff does not state expressly in his complaint the basis of this court's jurisdiction, it is apparent that this case properly proceeds as an employment discrimination action under Title VII of the Civil Rights Act of 1964, as amended, *see* 42 U.S.C. § 2000e *et seq*.[3]

---

[2]   Plaintiff challenges his dismissal from FLETC training in a separate civil action, Turner v. Federal Law Enforcement Training Center, Civ. No. 04-606 (HHK).

[3]   The administrative record of the MSPB proceedings is not before the Court. If this Court were to review the MSPB decision on plaintiff's race discrimination claim, the review would be *de novo*. *See Hayes v. United States Gov't Printing Office*, 684 F.2d 137, 141 (D.C. Cir. 1982) (in "mixed case" raising both discrimination and non-discrimination claims, court reviews MSPB determination on discrimination claim *de novo* and non-discrimination claim on the record); 5 U.S.C. § 7703(b)(2) (complainant seeking judicial review of MSPB final order in discrimination case files civil action under 42 U.S.C. § 2000e-16(c)). The burden-shifting
(continued...)

## II.  ANALYSIS

A.  Summary Judgment Standard

A party is entitled to summary judgment only when there are no genuine issues of material fact in dispute and the movant is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); Fed. R. Civ. P. 56(c).  A material fact is one "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  The party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248; *see also Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner*, 101 F.3d 145, 150 (D.C. Cir. 1996).  When evaluating a summary judgment motion, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge."  *Id.* at 255; *see Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 150 (2000).

B.  Analysis Under *McDonnell Douglas Corp. v. Green*

    1.    *Plaintiff Fails to Establish a Prima Facie Case of Race Discrimination*

Absent direct evidence of race discrimination, it is the plaintiff's initial burden in a Title VII action to establish a *prima facie* case by a preponderance of the evidence.  *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Stella v. Mineta*, 284 F.3d 135, 144 (D.C. Cir. 2002).  A plaintiff constructs a *prima facie* case of employment discrimination "by

---

[3](...continued)
analysis under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 803-05 (1973), is the same.

establishing that: '(1) [he] is a member of a protected class; (2) [he] suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination.'" *Stella*, 284 F.3d at 145 (quoting *Brown v. Brody*, 199 F.3d 446, 452 (D.C. Cir. 1999)). In this way, plaintiff shows that "his rejection is not attributable to 'the two most common legitimate reasons on which an employer might rely to reject a job applicant: an absolute or relative lack of qualifications or the absence of a vacancy in the job sought.'" *Stella*, 284 F. 3d at 145 (quoting *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 358 n.44 (1977)).

If a plaintiff succeeds in making out a *prima facie* case of discrimination, the burden shifts to the defendant to rebut the presumption of discrimination by producing "evidence that the adverse employment actions were taken for a legitimate, nondiscriminatory reason." *Aka v. Washington Hosp. Ctr.*, 156 F.3d 1284, 1289 (D.C. Cir. 1998) (citation omitted); *see Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981). At this point, the presumption of discrimination generated by the *prima facie* showing drops from the case, and the plaintiff has an opportunity to present evidence that race, not defendant's proffered reasons, was the true reason for the adverse employment action. *Burdine*, 450 U.S. at 254-55; *see Dunaway v. Int'l Bhd. of Teamsters*, 310 F.3d 758, 761 (D.C. Cir. 2002).

The parties do not dispute that plaintiff is a member of a protected class (African American) and that he suffered an adverse employment action (removal). Defendants argue that plaintiff does not make out a *prima facie* case because the circumstances of his removal do not give rise to an inference of discrimination.

<u>a. Plaintiff's Appointment was Conditional</u>

Plaintiff was appointed as a Park Police officer on October 7, 2001. Pl.'s Opp'n, Ex. 1

(Appointment Affidavits). The appointment was conditioned upon successful completion of FLETC's training program. *See* Defs.' Mot., Ex. 8 at 1. On July 28, 2003, the training coordinators issued to recruit class USPP I-304 the United States Park Police Law Enforcement Authority Memorandum. Davis Decl. ¶ 7. The memorandum instructed that, until a recruit graduated from FLETC and was duly sworn as a Park Police officer, he was "not authorized to become involved in any law enforcement situation in which [he acts] under color of law," and that, "[u]nder no circumstances should [he] take an enforcement action in which [he identifies himself] as a police officer." Defs.' Reply, Ex. 13 (April 19, 2004 Memorandum regarding Law Enforcement Authority).[4] Plaintiff acknowledged receipt of the memorandum on July 28, 2003. *Id.* (signature page).

Notwithstanding the oath plaintiff took in October 2001, he remained a conditional employee, and a conditional employee does not enjoy the due process protections that a permanent employee would enjoy. *See, e.g., Boyle v. Turnage*, 798 F.2d 549, 552 (1st Cir. 1986) (trainees who would become Veterans Administration hospital police officers upon successful completion of training program, "had no property interest in continued employment because of the probationary status of their jobs"). Thus, to the extent that plaintiff asserts a property interest

---

[4] Although the April 19, 2004 Memorandum bears a date months after plaintiff's dismissal from FLETC training, the content of the memorandum he received is identical. Davis Decl. ¶ 7. The training coordinators do not retain copies of the memoranda issued to recruits because the original memoranda are maintained on computer hard drives. *Id.* ¶ 4. Instead, the training coordinators retain copies of the recruits' signature pages. *Id.* ¶¶ 5-7. "When a new class arrives, the training coordinator changes the date of the memoranda, but the information and requirements identified in the memoranda remain the same." *Id.* ¶ 4. The same is true for memoranda pertaining to the Code of Conduct and training requirements for police recruits. *Id.* ¶¶ 5-6. Except for the date, these documents are otherwise identical to the documents issued to recruit classes USPP I-201 and USPP I-304, the police training classes that plaintiff attended. *Id.*

in his employment as a Park Police officer or an entitlement to due process, his claims fail. "Property interests in employment are not themselves constitutionally created; rather, they are derived from independent sources, such as statutes, regulations, ordinances, or 'existing rules or understandings . . . that secure certain benefits and that support claims of entitlement to those benefits.'" *Doe v. Gates*, 981 F.2d 1316, 1320 (D.C. Cir.) (citing *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972)), *cert. denied sub nom. Doe v. Woolsey*, 510 U.S. 928 (1993); *see Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 537 (1985); *Piroglu v. Coleman*, 25 F.3d 1098, 1104 (D.C. Cir. 1994) (probationary employee considered "at will" employee without property interest triggering procedural protection), *cert. denied*, 513 U.S. 1147 (1995). Nothing in the record supports plaintiff's contention that his employment was not conditional, that he had a reasonable expectation in his continued employment, or that the process actually afforded him was inadequate. Absent a recognized property interest, no procedural due process rights attach. *Roth*, 408 U.S. at 578 (concluding that non-tenured professor with fixed-term for one academic year had no property interest sufficient to require hearing when university declined to renew contract); *Gemmell v. Fed. Aviation Admin.*, 558 F.Supp. 918, 921 (D.D.C. 1982) (probationary air traffic controllers "may be dismissed for less than just cause" and "do not have a property interest in continued employment that rises to a Constitutional level").

    b.  <u>Plaintiff was Required to Complete Basic Police Training at FLETC but Did Not</u>

"All entry-level law enforcement personnel [of the United States Department of the Interior] shall successfully complete the prescribed training courses at [FLETC]." Defs.' Mot., Ex. 1 (excerpt from Dep't of the Interior Departmental Manual) at 2. Each recruit must "achieve a passing score/evaluation in each phase of Academy training." Defs.' Mot., Ex. 6 (excerpt from

April 19, 2004 Memorandum regarding United States Park Police Academy Training Requirements) at 1. Among other things, each recruit must achieve "a minimum 70 percent score for each test and a 'passing' evaluation in practical exercises," and must complete successfully driver, firearms, and physical training offered at FLETC. *Id.* "Any recruit who fails to meet [Park Police] Academy training requirements will be dismissed from training." *Id.* at 2. The record shows that plaintiff received the memorandum on July 28, 2003, and acknowledged receipt on July 29, 2003. *Id.* at 3 (signature page); Davis Decl. ¶ 6.

On July 28, 2003, the training coordinators issued to recruit class USPP I-304 a copy of the United States Park Police Recruit Code of Conduct Memorandum. Davis Decl. ¶ 5; Defs.' Mot., Ex. 2 (FLETC Directive No. 67-35.C, Student Misconduct, effective 01/02/02). Plaintiff acknowledged receipt of this document on July 28, 2003. Defs.' Mot., Ex. 5 (signature page).[5] By signing the form, plaintiff certified his understanding of the code's contents and potential penalties if he were to violate the code. *Id.* The form clearly stated that "[d]ismissal from training may be grounds for the termination of [his] employment" with the Park Police. *Id.*

There is no dispute that FLETC investigators found plaintiff in violation of FLETC Directives stemming from the November 8, 2003 altercation with fellow Park Police recruits. *See* Compl., Ex. 2 at 2; Defs.' Mot., Ex. 7 (November 13, 2003 letter from B.W. Smith, Dep. Asst. Dir., Office of Training Management, FLETC); Pl.'s Opp'n ¶ 9. Plaintiff admits his involvement in the November 8, 2003 incident, but disputes FLETC's authority to remove him

---

[5]  It appears that plaintiff dated the document "7/28/04" in error because he was no longer employed by the Park Police by that date. Plaintiff entered recruit class USPP I-304 on July 28, 2003 and was removed from the Park Police effective March 13, 2004. *See* Compl., Ex. 2 at 2; Pl.'s Surreply, Ex. 2.

from recruit class USPP I-304 because of this incident. Pl.'s Opp'n ¶ 9. His opposition raises no genuine issue of material fact in dispute as to his dismissal from FLETC training and the reasons FLETC put forth to justify his dismissal. Plaintiff's challenge to the validity of FLETC's decision to dismiss him is not an issue in this case.

The record also shows that plaintiff did not fulfill all of FLETC's academic requirements. A revised official transcript reflects that plaintiff did not participate in two practical exercises administered after his dismissal. Defs.' Mot., Ex. 10 (January 7, 2004 letter from W.K. Davis, Attorney Advisor, FLETC, with attachments). Plaintiff's reliance on a preliminary transcript suggesting, erroneously, his successful completion of all academic requirements for graduation from FLETC, *see id.*, Ex. 9 (Official Transcript); Pl.'s Opp'n ¶¶ 3, 11, is misplaced as that transcript is void. *See* Def.'s Mot., Ex. 10.

Defendants charged plaintiff with failure to complete basic police training and sustained that charge. Defs.' Mot., Ex. 11 (Removal Decision) at 1. The decision to remove plaintiff from the Park Police was "based on the fact that FLETC removed [him] from basic police training class USPP I-304 and dismissed [him] from training at FLETC. As a result of [his] removal and dismissal from FLETC, [he was] unable to complete FLETC police training, which is a required prerequisite for anyone to work in the position of a United States Park Police Officer." *Id.* at 2. Defendants expressly did not base the removal decision "on the underlying factual findings of FLETC regarding the incident of November 8, 2003." *Id.*

Having reviewed the parties' submissions, the Court concludes that plaintiff fails to set forth a *prima facie* case of race discrimination. Defendants establish that plaintiff's appointment was conditioned on his successful completion of basic police training at FLETC, that he did not

9

complete FLETC training, and that his failure to complete FLETC training was the basis for removal.  Plaintiff points to no facts tending to show that his removal gives rise to an inference of race discrimination.  Where plaintiff does assert race discrimination as motivation for his removal, *see, e.g.,* Pl.'s Opp'n ¶¶ 9-11, those arguments are relevant to FLETC's underlying decision to dismiss him from training, and have no bearing on the Park Police's decision to remove him from the police force.

      *2. Defendants Non-discriminatory Explanation*

Even if plaintiff had made out a *prima facie* case of discrimination, he fails to rebut defendants' showing of a legitimate, non-discriminatory reason for the employment action taken.  Plaintiff bears the ultimate burden of persuasion that defendant discriminated against him because of his race.  *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507 (1993).  Here, defendants require that all Park Police recruits complete basic police training as a condition of employment as a Park Police officer, and plaintiff's failure to do so is a valid ground for removal from the police force.  Plaintiff produces neither affidavits, nor declarations nor other documentary evidence to attack defendants' race-neutral explanation of its reasons for removing him.  Nor does plaintiff present any further evidence of defendants' intentional discrimination against him based on race.  In short, plaintiff does not "show that a reasonable jury could conclude that [he] was terminated for a discriminatory reason." *Waterhouse v. District of Columbia*, 298 F.3d 989, 992 (D.C. Cir. 2002).

### III.  CONCLUSION

For the reasons stated herein, the court concludes that plaintiff fails to make out a *prima facie* case of race discrimination.  Further, defendants demonstrate that there is no genuine issue

of material fact in dispute as to the nondiscriminatory reason for plaintiff's removal from the United States Park Police and that defendants are entitled to judgment as a matter of law. Accordingly, the defendants' motion for summary judgment is granted. An Order consistent with this Memorandum Opinion will be issued separately on this same date.


                                                       /s/
                                 HENRY H. KENNEDY, JR.
                                 United States District Judge