# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

### 2006 MSPB 336

Docket No. DC-315H-06-0054-I-1

### Vincent N. Chavies,
### Appellant,

v.

### Department of the Navy
### Agency.

November 27, 2006

David L. Boyd, Norfolk, Virginia, for the appellant.

Douglas T. Frydenlund, Portsmouth, Virginia, for the agency.

### BEFORE

Neil A. G. McPhie, Chairman
Mary M. Rose, Vice Chairman
Barbara J. Sapin, Member

Member Sapin issues a separate concurring opinion.

### OPINION AND ORDER

¶1     The agency has petitioned for review of the initial decision in which an administrative judge found that the appellant's separation could not be sustained. For the reasons stated below, we GRANT the agency's petition and AFFIRM the initial decision AS MODIFIED by this Opinion and Order. The appellant's separation is NOT SUSTAINED.

### BACKGROUND

¶2     On June 14, 2004, the appellant was appointed to the position of police officer, GS-4, in the Defense Logistics Agency. Appeal File, Tab 6, Subtab 4i. He transferred to the Department of the Navy effective August 28, 2005,

$$\left( PLT\ Ex\ 1\ \right)$$

accepting a position of police officer, GS-5. *Id.*, Subtabs 4f, 4g. By memorandum dated October 18, 2005, that agency notified him that he would be separated effective that day for inability to complete certain training requirements and for being tardy on at least one occasion. *Id.*, Subtab 4a.

¶3        The appellant filed an appeal with the Board's Washington Regional Office, challenging both procedural and merits aspects of his separation. *Id.*, Tab 1 at 5. In response, the agency argued that: The appellant was serving a probationary period under 5 C.F.R. subpart 315H at the time of the action; his separation therefore was effected under 5 C.F.R. § 315.804; he had raised no allegation reviewable by the Board under that section; any doubt that the appellant was a probationer when he was separated would be dispelled by the appellant's signing of a "Statement of Understanding" (SOU) acknowledging his probationary status; and the Board accordingly lacked jurisdiction over the appeal. *Id.*, Tab 6, Subtab 1 at 3.

¶4        In her initial decision, the administrative judge found that the appellant was a competitive service employee who had completed a year of current continuous service at the time of his separation, and she noted that 5 U.S.C. § 7511 provided that such employees were entitled to appeal their separations to the Board. Initial Decision at 2-3, Appeal File, Tab 8. She also found that the appellant had not waived his appeal right by signing the SOU. *Id.* at 3. Finally, she found that the separation could not be sustained because, by failing to provide the appellant with prior notice of the proposal to remove him and with an opportunity to respond to that proposal, the agency had denied him the constitutional due process rights to which he was entitled as an employee covered by 5 U.S.C. § 7511. *Id.* In light of these findings, she ordered the agency to cancel the separation. *Id.* at 4.[1]

¶5        The agency has filed a timely petition for review of the initial decision, Petition for Review (PFR), PFR File, Tab 2; and the appellant has filed a timely response, *id.*, Tab 4; *see id.*, Tab 8 (revised petition).[2]

## ANALYSIS

¶6        In its petition for review, the agency does not challenge the administrative judge's finding that the appellant was a competitive service employee, or her finding that he had completed a year of current continuous service at the time

of his separation. It also does not deny that 5 U.S.C. § 7511 and other provisions of 5 U.S.C. chapter 75 provide that such employees are entitled to appeal their involuntary separations to the Board. *See* 5 U.S.C. §§ 7511, 7512(1), 7513(d). It argues, however, that the administrative judge erred in rejecting its argument that the appellant had waived his appeal right by signing the SOU. PFR at 2. Specifically, it notes that the administrative judge cited *Ramos v. Department of Justice*, No. 04-3186, 2005 WL 1316981 (Fed. Cir. May 18, 2005); it notes that this decision is an unpublished, nonprecedential decision; and it argues that the administrative judge accordingly erred in relying on it. PFR at 2.

¶7    We see no error in the administrative judge's reference to the court decision in *Ramos*. While the decision is nonprecedential, the administrative judge cited it only in response to the agency's reliance on the Board's decision in the same case. Initial Decision at 3. Moreover, the court in *Ramos* reversed the Board's decision in that case. *Ramos*, No. 04-3186 *2. The administrative judge's pointing out this fact was entirely appropriate. *See* Initial Decision at 3.

¶8    In finding that the appellant had not waived his appeal rights by signing the SOU, the administrative judge cited *Hughes v. Social Security Administration*, 99 M.S.P.R. 67, ¶ 7 (2005). Initial Decision at 3. In *Hughes*, the employee transferred from one agency to another without a break in service. *See id.* ¶¶ 2, 6. Less than 1 year later, the agency to which she had transferred separated her involuntarily. *See id.* ¶ 2. The administrative judge dismissed the employee's appeal for lack of jurisdiction, finding that the employee had waived her appeal rights by signing a notice informing her, in effect, that she would be required to serve a new probationary period despite her previous service with another agency. *See id.* ¶¶ 2, 7. The Board reversed that decision. *Id.* ¶¶ 1, 7. It noted that the employee had not signed the notice until more than 2 months after starting her new job; it found that she had received no consideration from the agency in exchange for her signature; and it therefore concluded that there could be no enforceable waiver of the employee's appeal rights. *Id.* ¶ 7.

¶9    The agency argues that the present case is distinguishable from *Hughes* in

that the appellant in this case signed the SOU before starting work in the position from which he was involuntarily separated. PFR at 3. It also argues that the appellant received consideration for signing the document, i.e., that, in exchange for waiving his appeal rights, he received a promotion and additional police officer training. *Id.*

¶10 As indicated above, 5 U.S.C. § 7511 provides that a competitive service employee with at least 1 year of current continuous service generally may appeal his involuntary separation to the Board. An employee covered by this provision also is entitled to advance written notice of a proposal to separate him, and to a reasonable time in which to respond orally and in writing to the proposal. 5 U.S.C. §§ 7512(1), 7513(b)(1), (2). While these rights are provided by statute, they serve to ensure that employees are given the minimum due process to which a tenured public employee is entitled under the U.S. Constitution. *See Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 546 (1985) (an agency's failure to provide a tenured public employee with an opportunity to present a response, either in person or in writing, to an appealable agency action that deprives him of his property right in his employment constitutes an abridgement of his constitutional right to minimum due process of law, i.e., prior notice and an opportunity to respond); *King v. Erickson*, 89 F.3d 1575, 1581 (Fed. Cir. 1996) (an agency's compliance with the requirements of 5 U.S.C. § 7513 provides the minimum due process to which the employee is entitled), *rev'd on other grounds sub nom. Lachance v. Erickson*, 522 U.S. 262 (1998).

¶11 Under some circumstances, an employee may be found to have waived his rights under the provisions cited above. The circumstances that must be present in order to find an effective, enforceable waiver include, as the agency has suggested, the employee's receipt of consideration in exchange for the waiver. *Hughes*, 99 M.S.P.R. 67, ¶ 7. Other circumstances, however, must also be present. If the employee did not know of the rights he was waiving, or if the waiver did not reflect an "intentional relinquishment or abandonment of" those rights, the waiver is not effective and cannot be enforced. *See Brewer v. Williams*, 430 U.S. 387, 404 (1977) (waiver of an employee's right to counsel requires both comprehension and relinquishment); *Johnson v. Zerbst*, 304 U.S.

458, 464 (1938) ("A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege."); *Roberson v. Veterans Administration*, 32 M.S.P.R. 173, 176 (1987) (remanding appeal for, inter alia, determination of whether the employee's alleged waiver of his appeal rights constituted "an informed relinquishment of a known right"); *cf. Crawford v. Office of Personnel Management*, 100 M.S.P.R. 102, ¶¶ 2. 6-7 (2005) (the appellant's statement that she did not wish to appeal the disallowance of her application for a survivor annuity did not preclude her from pursuing that matter, since she had not been aware when she made that statement that the relief she sought could be obtained only if she obtained a survivor annuity).

¶12　　The record does not indicate that the appellant in this case knew of the rights he allegedly was waiving at the time he signed the SOU. Certainly, nothing in the SOU itself could have informed him of those rights; the document includes no mention of them. *See* SOU, Appeal File, Tab 6, Subtab 4g. Moreover, even if the appellant were aware through other sources of his rights under 5 U.S.C. chapter 75, the SOU does not provide for their waiver. While it indicates that the person signing it understands that, "in accordance with 5 C.F.R. [§] 315.801, [he] must serve a new probationary period," *id.*, the fact that an employee is serving a probationary period under that regulatory section does not establish that the employee is not entitled to the appeal rights and other protections of 5 U.S.C. chapter 75. *McCormick v. Department of the Air Force*, 307 F.3d 1339, 1341-43 (Fed. Cir. 2002); *see Stoute v. Department of the Navy*, 98 M.S.P.R. 409, ¶ 13 (2005) (the employee's written acknowledgment that he would be required to serve a new probationary period was not inconsistent with his coverage under 5 U.S.C. § 7511 and did not serve as an effective waiver of his rights under chapter 75). In addition, while the SOU includes a statement that the person signing it "may be terminated if [he fails] to demonstrate fully [his] qualifications for continued employment," such a failure may serve as a basis for terminating an employee's employment under 5 U.S.C. chapters 43 and 75 as well. 5 U.S.C. §§ 4303, 7512(1). Finally,[3] the SOU indicates that the appellant "will have limited appeal rights in accordance with the provisions of 5 CFR 315" in the event of such a termination. It does not provide, however, that he was waiving any other right

that might be available to him, such as his right to file a removal appeal under 5
U.S.C. chapter 75, to file an individual right of action appeal under 5 U.S.C.
§ 1221, or to file a discrimination complaint.

¶13    For the reasons stated above, and based on our review of the SOU as a
whole, we find that that document does not constitute or include a waiver of
the appellant's rights under 5 U.S.C. chapter 75. It is instead simply a notice
in which the agency advised the appellant of the rights it believed he would
have in the event of his involuntary separation during the first year following
his appointment, and in which the appellant acknowledged that he understood
the information in the notice. *Compare Bloch v. Powell*, 348 F.3d 1060, 1064,
1070-71 (D.C. Cir. 2003) (individual waived right to annuity by signing refund
application advising him that he might be entitled to an annuity if he had 5 or
more years of service, and that he would forfeit any such right by receiving the
refund for which he was applying), *with Payano v. Department of Justice*, 100
M.S.P.R. 74, ¶ 7 (2005) (a document that did not state that the employee
waived appeal rights he otherwise possessed, and that did not specify the
regulations that would be applicable to actions taken against the employee
during his first year of service did not constitute a waiver of the right to appeal
under chapter 75).[4]

¶14    We have indicated above that the appellant, as a competitive service
employee with a year of current continuous service at the time of his removal,
is among those employees who have been given the statutory right to appeal
their removals under 5 U.S.C. chapter 75. Because he has not waived that
right, we agree with the administrative judge that the Board has jurisdiction
over this appeal. We also concur in her finding that the agency's failure to
provide the appellant with advance notice of the proposal to remove him, and
with the opportunity to respond to that proposal, constitutes a denial of the
appellant's constitutional right to due process. *See Loudermill*, 470 U.S. at
546; *Schibik v. Department of Veterans Affairs*, 98 M.S.P.R. 591, ¶ 10 (2005).
Finally, we concur in her conclusion that the appellant's removal therefore
cannot be sustained. *See Schibik*, 98 M.S.P.R. 591, ¶ 10.

ORDER

¶15    We ORDER the agency to cancel the removal and to restore the appellant

effective October 18, 2005. See Kerr v. National Endowment for the Arts, 726 F.2d
730 (Fed. Cir. 1984). The agency must complete this action no later than 20
days after the date of this decision.

¶16    We also ORDER the agency to pay the appellant the correct amount of
back pay, interest on back pay, and other benefits under the Office of
Personnel Management's regulations, no later than 60 calendar days after the
date of this decision. We ORDER the appellant to cooperate in good faith in
the agency's efforts to calculate the amount of back pay, interest, and benefits
due, and to provide all necessary information the agency requests to help it
carry out the Board's Order. If there is a dispute about the amount of back
pay, interest due, and/or other benefits, we ORDER the agency to pay the
appellant the undisputed amount no later than 60 calendar days after the date
of this decision.

¶17    We further ORDER the agency to tell the appellant promptly in writing
when it believes it has fully carried out the Board's Order and to describe the
actions it took to carry out the Board's Order. The appellant, if not notified,
should ask the agency about its progress. See 5 C.F.R. § 1201.181(b).

¶18     No later than 30 days after the agency tells the appellant that it has fully
carried out the Board's Order, the appellant may file a petition for enforcement
with the office that issued the initial decision in this appeal if the appellant
believes that the agency did not fully carry out the Board's Order. The
petition should contain specific reasons why the appellant believes that the
agency has not fully carried out the Board's Order, and should include the
dates and results of any communications with the agency. 5 C.F.R. § 1201.182
(a).

¶19    For agencies whose payroll is administered by either the National Finance
Center of the Department of Agriculture (NFC) or the Defense Finance and
Accounting Service (DFAS), two lists of the information and documentation
necessary to process payments and adjustments resulting from a Board
decision are attached. The agency is ORDERED to timely provide DFAS or
NFC with all documentation necessary to process payments and adjustments
resulting from the Board's decision in accordance with the attached lists so
that payment can be made within the 60-day period set forth above. The

checklists are also available on the Board's webpage at http://www.mspb.gov/mspbdecisionspage.html.

¶20     This is the final decision of the Merit Systems Protection Board in this appeal. Title 5 of the Code of Federal Regulations, section 1201.113(c) (5 C.F.R. § 1201.113(c)).

NOTICE TO THE APPELLANT
REGARDING
YOUR RIGHT TO REQUEST
ATTORNEY FEES AND COSTS

You may be entitled to be paid by the agency for your reasonable attorney fees and costs. To be paid, you must meet the requirements set out at Title 5 of the United States Code (5 U.S.C.), sections 7701(g), 1221(g), or 1214(g). The regulations may be found at 5 C.F.R. § § 1201.201, 1201.202 and 1201.203. If you believe you meet these requirements, you must file a motion for attorney fees WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION. You must file your attorney fees motion with the office that issued the initial decision on your appeal.

NOTICE TO THE APPELLANT REGARDING
YOUR FURTHER REVIEW RIGHTS

You have the right to request the United States Court of Appeals for the Federal Circuit to review this final decision. You must submit your request to the court at the following address:

United States Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, DC 20439

The court must receive your request for review no later than 60 calendar days after your receipt of this order. If you have a representative in this case and your representative receives this order before you do, then you must file with the court no later than 60 calendar days after receipt by your representative. If you choose to file, be very careful to file on time. The court has held that normally it does not have the authority to waive this statutory deadline and that filings that do not comply with the deadline must be dismissed. *See Pinat v. Office of Personnel Management*, 931 F.2d 1544 (Fed. Cir. 1991).

If you need further information about your right to appeal this decision to court, you should refer to the federal law that gives you this right. It is found in Title 5 of the United States Code, section 7703 (5 U.S.C. § 7703). You may read this law, as well as review the Board's regulations and other related material, at our website, http://www.mspb.gov. Additional information is available at the court's website, http://fedcir.gov/contents.html. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, and 11.

FOR THE BOARD:

/s/
Bentley M. Roberts, Jr.
Clerk of the Board
Washington, D.C.

## CONCURRING OPINION OF BARBARA J. SAPIN

in

*Vincent N. Chavies v. Department of the Navy*

MSPB Docket No. DC-315H-06-0054-I-1

¶1    I agree that the initial decision should be affirmed, and I do not take exception to the finding that the language in the Statement of Understanding (SOU) at issue in this case is insufficient to waive the appellant's appeal rights under 5 U.S.C. chapter 75. I would base the decision, however, on a broader holding. That is, I would hold that a waiver of chapter 75 rights, signed on a routine basis in connection with an employment offer, is not enforceable.

¶2    In cases involving the waiver of statutory rights, courts – including the U.S. Supreme Court and our reviewing court, the U.S. Court of Appeals for the Federal Circuit – have recognized that policies underlying the statutory provisions being waived may render the waivers unenforceable. *See Town of Newton v. Rumery*, 480 U.S. 386, 392 (1987) (referring to "[t]he question whether the policies underlying [the] statute [conferring the rights purportedly waived] may in some circumstances render that waiver unenforceable"); *McCall v. U.S. Postal Service*, 839 F.2d 664, 666 (Fed. Cir. 1988). They also have held that the relevant principle in cases involving the enforceability of such waivers is that a waiver "is unenforceable if the interest in its enforcement is outweighed in the circumstances by a public policy harmed by enforcement of the agreement." *Rumery*, 480 U.S. at 392; *McCall*, 839 F.2d at 666; *Equal Employment Opportunity Commission v. Cosmair, Inc., L'Oreal Hair Care Division*, 821 F.2d 1085, 1090 (5th Cir. 1987) (quoting *Rumery*).

¶3    The alleged waiver in this case is twofold. According to the agency, the appellant waived both his right to appeal his separation under chapter 75 and his right to the substantive and procedural protections of that chapter.

¶4    With respect to waivers of appeal rights, courts have noted that the interest in enforcement of such waivers – at least in cases where the waiver is part of an agreement settling a dispute – is to encourage private settlement of disputes. *Cosmair, Inc.*, 821 F.2d at 1090. A public policy that could be harmed by enforcement of the agreement is the public's "interest in seeing that

civil servants receive full and fair consideration of disciplinary actions." *McCall*, 839 F.2d at 667.

¶5        Courts have drawn a distinction between waiver of the right to appeal a matter that had already arisen at the time of the waiver agreement, and prospective waiver of the right to appeal a matter that had not yet arisen at that time. They have upheld the former even when the waiver left no alternative means of challenging the matter. *See, e.g., McCall*, 839 F.2d at 665; *Torrez v. Public Service Co. of New Mexico, Inc.*, 908 F.2d 687, 688 (10th Cir. 1990). Courts have been more reluctant, however, to uphold prospective waivers of appeal rights, a category of waivers that would include the alleged waiver in the SOU in this case. *See, e.g., Reighard v. Limbach Co., Inc.*, 158 F. Supp. 2d 730, 730-34 (E.D. Va. 2001) (covenant, in employment agreement, to waive claims under Employee Retirement Income Security Act (ERISA) was invalid); *cf. D. H. Overmyer Co., Inc. v. Frick Company*, 405 U.S. 174, 186 (1972) (in upholding the confession-of-judgment clause of a contract, the Court relied in part on evidence that the parties' earlier contracts included no such clause, and that the clause in question was added only after the petitioners had repeatedly become delinquent in payments and had requested further relief from the respondent). This reluctance is consistent with the diminished interest in encouraging private settlements of disputes that did not even exist at the time of the settlements. It also is consistent with courts' reluctance to provide the party benefiting from the waiver with an opportunity to violate rights that, absent the waiver, would have been protected by a statutory remedy. *See, e.g., Reighard*, 158 F. Supp. 2d at 732-33 (case law finding prospective waivers of ERISA claims ineffective as to unknown, future ERISA claims "is based on the sensible proposition – well-recognized in cases considering the validity of waivers of future statutory rights – that such waivers, if allowed, would have the pernicious effect of tending to encourage violations by assuring the wrongdoers that they may act with impunity"). In fact, courts have found prospective waivers of some rights – including rights provided under Title VII of the Civil Rights Act of 1964 – generally unenforceable. *See id.* at 734; *Richardson v. Sugg*, 448 F.3d 1046, 1053-55 (8th Cir. 2006) (referring to the Supreme Court's holding that Title VII rights "are not susceptible of

prospective waiver"); *Faris v. Williams WPC-I, Inc.*, 332 F.3d 316, 321 (5th Cir. 2003) ("While a release of Title VII claims will not ordinarily violate public policy, an employee may validly release only those Title VII claims arising from discriminatory acts or practices which antedate the execution of the release.").

¶6        Moreover, while some prospective waivers of review rights have been upheld, decisions reaching this result indicate that the waivers would not have been enforced in the absence of evidence that the terms of the waivers were fair, and that those waiving their statutory rights were provided with protections and potential benefits that were either comparable to those that would have been available in the absence of the waivers or otherwise adequate under the circumstances. *See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 28 (1991) (in upholding employee's waiver, Court noted that, "so long as the prospective litigant effectively may vindicate [his] statutory cause of action in the arbitral forum, the statute will continue to serve both its remedial and deterrent function") (emphasis added) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637 (1985)); *see also id.* at 30-32 (addressing adequacy of procedures, review, and benefits under arbitration); *Cole v. Burns International Security Services*, 105 F.3d 1465, 1479-86 (D.C. Cir. 1997) (upholding arbitration agreement to the extent provisions of that agreement permitted the employee to effectively vindicate his statutory cause of action, but striking down provision requiring fee payment that would not have been required under statutory remedy). This approach has been taken even when the individual waiving his statutory rights receives the kind of consideration allegedly provided to the appellant in this case, i.e., even when the individual is provided employment in return for his agreement to waive statutory rights. *See Gilmer*, 500 U.S. at 23; *Cole*, 105 F.3d at 1466, 1469. In decisions enforcing agreements to substitute arbitration for the statutory remedy – decisions that include all the cases cited in this paragraph – courts also have relied on authorities such as the Federal Arbitration Act, whose purpose "was to reverse . . . judicial hostility to arbitration agreements . . .," and on case law reflecting that Congress and the courts "generously support arbitration." *Cole*, 105 F.3d at 1470; *Morrison v. Circuit City Stores, Inc.*, 70

F. Supp. 2d 815, 828 (S.D. Ohio 1999), *aff'd on other grounds*, 317 F.3d 646 (6th Cir. 2003).

¶7    The procedural protections on which the decisions cited above relied in upholding prospective waivers are not provided in the SOU at issue here. There is no indication that the appellant would have been entitled to any negotiated grievance or arbitration procedures comparable to those mentioned above. In place of the rights to which the appellant was entitled under chapter 75, the SOU allegedly would have offered only the review rights available to probationary employees under 5 C.F.R. subpart 315H. Review rights under subpart 315H cannot be considered comparable to the rights provided under chapter 75. Under chapter 75, employees are entitled to a review of the merits of adverse actions taken against them, as well as the opportunity to raise a broad range of affirmative defenses not available under subpart 315H. Even if employing agencies could be considered free to routinely condition employment offers on acceptance of review rights other than those provided under chapter 75, therefore, the cases cited above would provide no support for upholding the substitution allegedly made here.

¶8    As indicated above, courts have held that rights provided under Title VII generally may not be waived prospectively. These holdings, and a similar reluctance to enforce waivers of rights under the Age Discrimination in Employment Act (ADEA), have been based on considerations related to the broad purposes of this legislation. That is, they are based on the proposition that a private litigant in a case arising under those authorities vindicates important social policies in addition to seeking a remedy for himself. *See Gilmer*, 500 U.S. at 27 (ADEA); *Richardson*, 448 F.3d at 1054 (Title VII). These public policy considerations are present, to a significant extent, in cases arising under the CSRA. Not only does chapter 75 protect the public's "interest in seeing that civil servants receive full and fair consideration of disciplinary actions," as indicated above, but it supports the merit system principles stated in 5 U.S.C. § 2301 – principles that serve the public interest in an efficient and effective federal workforce by providing for retention of employees on the basis of the adequacy of their performance, and by protecting them from arbitrary action unrelated to their ability to serve the public. *See* 5

U.S.C. § 2302(b)(6), (7). These interests would appear to be sufficient to outweigh any public interest favoring routine prospective waivers of appeal rights as a condition of employment.

¶9      I note further that the Federal Arbitration Act, on which courts have relied in some of the cases cited above, does not govern the rights of federal employees such as the appellant in this case. Those rights are governed instead by the Civil Service Reform Act of 1978 (CSRA), Pub. L. No. 95-454, 1978 U.S.C.C.A.N. (92 Stat.) 1111. In enacting that legislation, Congress established a system for reviewing adverse actions that defined the circumstances under which those actions were reviewable by the Board under chapter 75, as well as the circumstances under which alternative procedures (such as arbitration) were available. *See id.* §§ 204, 205, 701, 1978 U.S.C.C.A.N. (92 Stat.) 1134-44, 1191-1216. This system was developed based on a careful consideration and balancing of competing interests and needs that would be affected by the system. *See, e.g.,* S. Rep. No. 95-969, at 4 (1978), *as reprinted in* 1978 U.S.C.C.A.N. 2723, 2726 (referring to the "tension between protections established to insure that employees are hired and fired solely on the basis of their ability, and the need of managers and policymakers to have flexibility to perform their jobs," and stating that "[t]his balanced bill should help to accomplish [the] objective of "[a]llowing civil servants to be able to be hired and fired more easily, but for the right reasons").

¶10     I have indicated above that waivers of appeal rights may be enforced when they are included in an agreement settling an actual dispute. Our reviewing court has indicated that other circumstances may warrant even prospective waivers of those rights; that is, it has indicated that an employee may be required under some circumstances to serve a probationary period that might not have been required absent the employee's agreement at the time she was hired. *See Shelton v. Department of the Air Force*, 382 F.3d 1335, 1336-37 (Fed. Cir. 2004) (the agency did not exceed its authority in requiring an employee to serve a probationary period after a 13-year gap in service). Nothing in the SOU in this case, however, or elsewhere in the record, suggests that there was any reason for requiring the appellant, based on circumstances

specific to him, to serve a new probationary period beginning with his appointment to the position from which he was separated. Instead, as the Opinion and Order indicates, the SOU appears to be a standard document provided on a routine basis to individuals who, like the appellant, were being appointed to positions from "an OPM/DEU list of eligibles." Opinion and Order ¶ 13 n.4. An employing agency that requires such waivers of chapter 75 rights routinely, as a standard condition of employment, is in effect substituting its own judgment for that of Congress and overriding the balancing of interests on which the CSRA is based. This is not a proper role for employing agencies.

¶11    The concerns addressed above are particularly important in light of the fact that the appellant allegedly waived not only his right to appeal but also his right to the other substantive and procedural protections of chapter 75. That is, he allegedly waived the provision prohibiting the agency from taking an adverse action against him for any reason other than "such cause as will promote the efficiency of the service"; and he waived procedural rights including his right to at least 30 days' advance written notice of any proposed adverse action, and his right to respond orally and in writing to such a notice. *See* 5 U.S.C. § 7513. The relatively extensive nature of the rights the appellant allegedly waived weighs against a finding that any such waiver would be enforceable. *See Gilmer*, 500 U.S. at 26 (in finding waiver of statutory review rights enforceable, the Court noted its earlier "recogni[tion] that '[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum'") (quoting *Mitsubishi Motors Corp.*, 473 U.S. at 628).

¶12    I also know of no current authority supporting the enforceability of routine prospective waivers of substantive rights such as those at issue here. Although the Board issued a decision in 2005 supporting such a waiver, that decision was reversed by our reviewing court. *Ramos v. Department of Justice*, 94 M.S.P.R. 623 (2003), *rev'd*, No. 04-3186, 2005 WL 1316981 (Fed. Cir. May 18, 2005). The issue does not appear to have come before the Board – or been addressed by the courts – since then.

¶13    I note further that the public's interest in seeing that tenured civil servants receive the rights Congress has given them under chapter 75 is even greater

than its interest in seeing that the rights are enforced in a Board appeal proceeding. Not only are these the very rights that would be enforced in an appeal proceeding – in other words, the reason for bringing such a proceeding – but the procedural protections of chapter 75 include the constitutional due process rights to which tenured government employees are entitled. *See Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 546 (1985) (an agency's failure to provide a tenured public employee with an opportunity to present a response, either in person or in writing, to an appealable agency action that deprives him of his property right in his employment constitutes an abridgement of his constitutional right to minimum due process of law, i.e., prior notice and an opportunity to respond); *King v. Erickson*, 89 F.3d 1575, 1581 (Fed. Cir. 1996) (an agency's compliance with 5 U.S.C. § 7513 provides the minimum due process to which the employee is entitled), *rev'd on other grounds*, 522 U.S. 262 (1998).

¶14      Courts have been reluctant to enforce waivers implicating due process concerns when the parties have had unequal bargaining power. *See, e.g., Overmyer*, 405 U.S. at 186 (noting that the clause the Court was upholding – a clause in which the petitioners had waived their due process rights to prejudgment notice and hearing – had not arisen in "a case of unequal bargaining power"); *id.* at 188 ("where the contract is one of adhesion, where there is great disparity in bargaining power, and where the debtor receives nothing for the [waiver] provision, other legal consequences may ensue"). In this case, as in most situations in which an agency is offering a position to a prospective employee, the parties clearly had unequal bargaining power. Chapter 75 and other provisions enacted as part of the CSRA were intended to provide certain rights to employees who, because of their unequal bargaining power, would be unable to gain them individually. *See Bull v. United States*, 65 Fed. Cl. 407, 412 (2005) (in addressing effect of collective bargaining agreement on individual employees' rights, court referred to a "disparity in bargaining power that Congress sought to rectify through passage of the CSRA"); *cf. Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697, 706-07 (1945) (reference to "the unequal bargaining power as between employer and employee"). Permitting routine waivers of substantive chapter 75 protections

therefore would be inconsistent both with the intent of Congress and with judicial reluctance to enforce waivers of due process rights.

¶15      Finally, I note that, if individual employing agencies were permitted to require waivers of chapter 75 rights as a condition of employment, and to do so only in order to avoid the inconvenience or other limitations of chapter 75, the exceptions carved out by those waivers could make chapter 75 merely a default system, possibly used only on relatively rare occasions, rather than the generally applicable system Congress designed and intended. *See In re Grand Jury Subpoena, Judith Miller*, 438 F.3d 1141, 1177 (D.C. Cir. 2006) (Henderson, J. concurring) ("Because the government could demand waivers [of confidentiality regarding "leaks" to news media] – perhaps even before any leak occurs – as a condition of employment, a privilege subject to waiver may . . . amount to no privilege at all . . . .").

¶16      I would find that any public interest in enforcing a routine waiver of chapter 75 rights is outweighed by public policies that would be harmed by the enforcement. For these and the other reasons stated above, I would find the alleged waiver unenforceable, and I would AFFIRM the initial decision.


/s/
Barbara J. Sapin
Member


---

[1] The administrative judge also ordered the agency, if it filed a petition for review of the initial decision, to provide the appellant with interim relief under 5 U.S.C. § 7701(b) (2)(A). Initial Decision at 5. That provision generally requires, in cases such as this, that an appellant be returned to the position from which he was separated, effective as of the date of the initial decision, unless the agency determines that this action would unduly disrupt the work environment. *See* 5 U.S.C. § 7701(b)(2)(A), (2)(A)(ii)(II).

In the submissions he has filed in response to the agency's petition for review, the appellant alleges that the agency has failed to comply with the administrative judge's interim relief order. Specifically, he notes that the agency has assigned him to a position other than the police officer position from which he was separated; he asserts that it has informed him that this action was based on its determination that his return to duty would be unduly disruptive; and he argues that this determination is incorrect. Petition for Review (PFR) File, Tab 8 (submission of Jan. 24, 2006) at 3; *id.* (attachments). We note, however, that the Board has no authority to review the merits of such determinations. *See*

*King v. Jerome*, 42 F.3d 1371, 1374-75 (Fed. Cir. 1994).  Moreover, while the appellant also asserts that he has not received a pay check since his return to duty, PFR File, Tab 8 at 6, the agency has responded to this assertion by explaining that an error delayed the appellant's receipt of pay, stating that the error has been corrected, and stating further that the appellant has received more than $3,000 as of a date a little over 2 months after the initial decision was issued, *id.*, Tab 10 at 4.  Under these circumstances, we see no proper basis for dismissing the agency's petition for review.  *See Zazueta v. Department of Justice*, 94 M.S.P.R. 493, ¶ 2 n. (2003) (the Board declined to dismiss the agency's petition for review for failure to comply with an interim relief order, where the agency's initial failure to pay the appellant promptly was inadvertent and promptly corrected), *aff'd*, 104 F. App'x 166 (Fed. Cir. 2004); *see also Forma v. Department of Justice*, 57 M.S.P.R. 97, 102 (the Board treats allegations of noncompliance with interim relief orders as motions to dismiss the agencies' petitions for review), *aff'd*, 11 F.3d 1071 (Fed. Cir. 1993) (Table).

[2] The appellant characterizes his response as a "Cross Petition for Review."  Because he raises no objections to the initial decision, however, and because he instead asks that that decision be upheld, it is more properly characterized as a response to the agency's petition.  PFR File, Tab 4 at 7; *id.*, Tab 8 at 7; *see Kohl v. Department of the Army*, 80 M.S.P.R. 678, ¶ 4 n.1 (1999).

[3] The remaining condition described in the SOU concerns only matters not relevant to this case, i.e., the appellant's rights during a reduction in force.

[4] The SOU is headed "STATEMENT OF UNDERSTANDING REGARDING EMPLOYEES APPOINTED TO POSITIONS FROM AN OPM/DEU LIST OF ELIGIBLES," and it appears to be a standard document provided on a routine basis to employees meeting the description in this heading.  Because we have found that the statements in the SOU are not sufficient to waive the appellant's chapter 75 rights, we need not determine whether such a standard notice, routinely presented to employees receiving job offers, could serve as an effective waiver of those rights if the language were modified to include an express waiver.



## Career and Career-Conditional Appointments

### Purpose

Permanent employees are generally hired into the Federal governm under a career-conditional appointment. A career-conditional empl must complete three years of substantially continuous service befo becoming a full career employee. This 3-year period is used to det whether or not the Government is able to offer the employee a car

### Service Requirement for Career Tenure

An employee must have 3 years of substantially continuous creditaservice to become a career employee, i.e. obtain career tenure. Th year period must begin and end with nontemporary employment in competitive service. Generally, substantially continuous creditable must not include any break in service of more than 30 calendar da an employee does not complete the 3-year period, a single break i service of more than 30 calendar days will require the employee to a new 3-year period. (Periods of time in a nonpay status are not br in service and do not require the employee to begin a new 3-year p However, they may extend the service time needed for career ten Career-conditional employees automatically become career employ upon completion of this service requirement. Additionally, employe with career tenure have a higher retention standing during layoffs.

### Required Probationary Period

The first year of service of an employee who is given a career-conc appointment is considered a probationary period. The probationary period is really the final and most important step in the examining process. It affords the supervisor an opportunity to evaluate the employee's performance and conduct on the job, and to remove th person without undue formality, if necessary. A person who is transferred, promoted, demoted, or reassigned before completing probation is required to complete the probationary period in the ne

$\left( PLT \, Ex. \, 2 \right)$

position. Prior Federal civilian service counts toward completion of probation if it is in the same agency, same line of work, and withou break in service.

Care should be taken to distinguish the 1-year probationary period the 3-year career-conditional period. The probationary period is us determine the employee's ability and fitness required for permaner Government service. The 3-year career-conditional period is establ only to measure the employee's interest in, and the Government's to provide, a career in the Federal service.

## Acquiring Competitive Status

Competitive status is a person's basic eligibility for assignment (e.c transfer, promotion, reassignment, demotion, or reinstatement) to position in the competitive service without having to compete with members of the general public in an open competitive examination When a vacancy announcement indicates that status candidates ar eligible to apply, career employees and career-conditional employe who have served at least 90 days after competitive appointment m apply. Once acquired, status belongs to the individual, not to a pos

For more information on career and career-conditional appointmen probationary period, tenure, and competitive status, consult Title 5 Code of Federal Regulations (CFR), 5 CFR Part 315.

*AS OF: 09-23-1999*

-----

**Career and Career-Conditional Appointments** can be <u>print</u> as it appears on your browser.

It also can be printed as an exact replica of the official publication <u>(ei-38.pdf)</u>. Download the file by clicking on the .pc file name and follow <u>print help instructions</u> below.

<u>TOP</u>

**PRINT TIPS:**

## To Print your browser File:

*Prints file as it appears on your browser.
Most web browsers support an option to print the document th
is displayed on the screen. Simply choose the option to print th
document (usually located under the file option) and then choc
the option to print. How the document prints is dependent on t
printer you are using.

If you are on a local area network (LAN) then you may need tc
select a printer before you can print. An option to do this is
normally available in the same area that you choose to print a
document.

You will also need to make sure that the printer is powered on,
on-line, and has paper available.

## To Print an *Adobe Acrobat/PDF files:

*Prints exact replica of official publication.
The Adobe Acrobat reader is a freeware product available from
Adobe at http://access.adobe.com. There are versions of the
Adobe Acrobat reader for several computer platforms. Click he
http://access.adobe.com/ to connect to the Adobe Acrobat site
Once there you can obtain the reader for your computer
platform. Follow the instructions on the Adobe site to install th
reader on your system. Once you have installed the reader you
can view or print files that end in .PDF.

Some browsers will allow you to configure a "helper" applicatio
that will load the Adobe Acrobat reader whenever you click on
file that ends in .PDF. Please refer to the instructions that cam
with your web browser on how to set up or install a "helper"
application. The Adobe site also contains instructions on how to
do this.

The Windows file manager will also allow you to specify an
association so that whenever Windows needs to display a file
that ends in .PDF it will load the Adobe Acrobat reader.

## TOP

Home | Search Jobs | My USAJOBS | Information Center | Veterans | Forms | |
Services
FAQS | Privacy Policy | Help | Site Map
Contact Us | Privacy Act and Public Burden Information

This is a United States Office of Personnel Management website. USAJOBS is th
Government's
official one-stop source for Federal jobs and employment information.

    

315.804 Termination of probationers for unsatisfactory performance or conduct.
315.805 Termination of probationers for conditions arising before appointment.
315.806 Appeal rights to the Merit Systems Protection Board.

### Subpart I—Probation on Initial Appointment to a Supervisory or Managerial Position

315.901 Statutory requirement.
315.902 Definitions.
315.903 Coverage.
315.904 Basic requirement.
315.905 Length of the probationary period.
315.906 Crediting service toward completion of the probationary period.
315.907 Failure to complete the probationary period.
315.908 Appeals.
315.909 Relationship to other actions.

AUTHORITY: 5 U.S.C. 1302, 3301, and 3302; E.O. 10577, 3 CFR, 1954–1958 Comp. P. 218, unless otherwise noted; and E.O. 13162. Secs. 315.601 and 315.609 also issued under 22 U.S.C. 3651 and 3652. Secs. 315.602 and 315.604 also issued under 5 U.S.C. 1104. Sec. 315.603 also issued under 5 U.S.C. 8151. Sec. 315.605 also issued under E.O. 120034, 3 CFR, 1978 Comp. p. 111. Sec. 315.606 also issued under E.O. 11219, 3 CFR, 1964–1965 Comp. p. 303. Sec. 315.607 also issued under 22 U.S.C. 2506. Sec. 315.608 also issued under E.O. 12721, 3 CFR, 1990 Comp., p. 293. Sec. 315.610 also issued under 5 U.S.C. 3304(d). Sec. 315.611 also issued under Section 511, Pub. L. 106–117, 113 STAT. 1575–76. Sec. 315.710 also issued under E.O. 12596, 3 CFR, 1967, Comp., p. 229. Subpart I also issued under 5 U.S.C. 3321, E.O. 12107, 3 CFR, 1978 Comp., p. 264.

SOURCE: 33 FR 12418, Sept. 4, 1968, unless otherwise noted.

## Subpart A   [Reserved]

## Subpart B—The Career-Conditional Employment System

### § 315.201   Service requirement for career tenure.

(a) *Service requirement.* A person employed in the competitive service for other than temporary, term, or indefinite employment is appointed as a career or career-conditional employee subject to the probationary period required by subpart II of this part. Except as provided in paragraph (c) of this section, an employee must serve 3 years of substantially continuous creditable service as defined in paragraph (b) of this section to become a career employee.

(b) *Creditable service.* Unless otherwise approved by OPM, the service required for career tenure must begin and end with nontemporary employment in the competitive service except as described in paragraph (1) of this subsection, must include service under an appointment based on or leading to competitive status, be substantially continuous, and total 3 years, as follows:

(1) *Nontemporary employment.* To be creditable, the 3-year period of service must begin with one of the following:

(i) Nontemporary appointment in the competitive service. For this purpose, nontemporary appointment includes a career-conditional appointment; career appointment; reinstatement under subpart D of this part; and transfer under subpart E of this part. The 3-year period may also begin, but not end, with status quo employment under subpart G of part 316 of this chapter, and overseas limited appointment of indefinite duration or overseas limited term appointment under part 301 of this chapter. The 3-year period also may have begun with permanent employment under now obsolete appointing authorities such as probational, war service indefinite, and emergency indefinite appointments. Determinations of whether an obsolete authority provides the basis for creditable service may be obtained from OPM;

(ii) The acquisition of competitive status on January 23, 1955, under provisions of Executive Order 10577, while serving in the excepted service;

(iii) Nontemporary appointment from a civil service register to a position in the excepted service before January 23, 1955;

(iv) Nontemporary appointment to a position in the District of Columbia Government before January 23, 1955, evidencing selection in regular order from a civil service register used to certify for probational appointment in the Federal service. Appointment from a register maintained only for District of Columbia Government would not meet this condition;

(v) Nontemporary appointment to an excepted position, *provided the employee's excepted position was brought into the competitive service* and, on that

(PLT Ex 3)

basis, the employee acquired competitive status or was converted to a career or career-conditional appointment;

(vi) Nontemporary appointment to a nonappropriated fund (NAF) position in or under the Department of Defense, *provided the employee's NAF position was brought into the competitive service* and, on that basis, the employee acquired competitive status or was converted to a career or career-conditional appointment;

(vii) Nontemporary excepted or nonappropriated fund appointment, Foreign Service appointment, or appointment in the Canal Zone Merit System, provided the employee is appointed or transferred to a competitive service position under the terms of an interchange agreement with another merit system under §6.7 of this chapter, under Executive Order 11219 as amended by Executive Order 12292, or under Executive Order 11171;

(viii) The date of appointment to a position on the White House Staff or in the immediate office of the President or Vice President, provided the service has been continuous and the individual was appointed to a competitive service position under §315.602 of this chapter;

(ix) The date of nontemporary excepted appointment under §213.3202(b) of this chapter, provided the student's appointment is converted to career or career-conditional appointment under Executive Order 12015, with or without an intervening term appointment, and without a break in service of one day.

(x) The date of veterans readjustment appointment (VRA), provided the appointment is converted to career or career-conditional appointment under §315.705 of this chapter, or the person is appointed from a civil service register without a break in service while serving under a VRA;

(xi) The date of nontemporary appointment to the Postal Career Service or the Postal Rate Commission after July 1, 1971, provided the individual is appointed to a career or career-conditional appointment under 39 U.S.C. 1006;

(xii) The date of nontemporary appointment under Schedule A, §§213.3102(t) or 213.3102(u) of this chapter, of a mentally retarded or severely physically handicapped person, pro-

vided the employee's appointment is converted to career or career-conditional appointment under §315.709 of this chapter;

(xiii) The date of appointment as a Presidential Management Intern under Schedule A, §213.3102(ii) of this chapter, provided the employee's appointment is converted to career or career-conditional appointment under §315.708;

(xiv) The date of temporary appointment pending establishment of a register, provided the appointment was converted to career executive assignment;

(xv) The date of temporary appointment pending establishment of a register (TAPER), provided:

(A) The employee is serving on or after February 8, 1968, and his or her TAPER employment is changed by conversion or by an appointment without a break in service of a single workday to a career or career-conditional appointment from a civil service register; and

(B) His or her TAPER service has been continuous without a break in service of more than 30 calendar days or without interruption for more than 30 calendar days by other than status quo or indefinite employment in the competitive service, or military service provided he or she is reemployed as a TAPER employee within 120 days after separation under honorable conditions from the military service;

(xvi) The starting date of National Guard technician service performed before January 1, 1969, provided the person was employed as a National Guard technician on December 31, 1968, and his or her position was brought into the competitive service on January 1, 1969;

(xvii) The starting date of active service as an administrative enrollee in the United States Merchant Marine Academy; and

(xviii) The date on which an employee became eligible for benefits under Public Law 83–121, unless an earlier date can be chosen because of prior nontemporary service.

(xix) The date of appointment as a career intern under Schedule B, §213.3202(o) of this chapter, provided

the employee's appointment is converted to career or career-conditional appointment under § 315.712.

(2) *Competitive status.* Career tenure is acquired only under a permanent appointment in the competitive service that provides or leads to competitive status.

(3) *Substantially continuous service.* A single break in creditable service of more than 30 calendar days will require the beginning of a new 3-year period, except for:

(i) Breaks incident to entry into or return from military service and return from defense transfer, provided the person is reemployed in Federal service during his or her period of statutory or regulatory restoration or reemployment rights;

(ii) Breaks incident to transfer to and from an international organization, provided the person is reemployed in Federal service under subpart C of part 352 of this chapter;

(iii) Breaks during which an employee was eligible to receive injury compensation under the Office of Workers' Compensation Programs, provided the person is reemployed under part 353 of this chapter;

(iv) Breaks incident to a restoration to correct an unjustified or unwarranted separation;

(v) Breaks following separation by reduction in force of employees who are eligible for entry on the reemployment priority list under subpart B of part 330 of this chapter, provided the person is reemployed in Federal service during the period of his or her reemployment priority;

(vi) Breaks following involuntary separation without personal cause of employees who are eligible for a noncompetitive appointment based on an interchange agreement with another merit system under § 6.7 of this chapter, provided the person is employed in the competitive service under the agreement during the period of his or her eligibility;

(vii) Breaks incident to volunteer service or training required after enrollment in volunteer service provided the person is reemployed in Federal service within 90 days of the termination of volunteer service or training. This provision applies to Peace Corps,

VISTA, or other ACTION full-time programs that are potentially creditable in subsequent Federal employment for length of service for leave, reduction in force, and retirement purposes;

(viii) Breaks incident to employment in a nonfederal organization that occurred because a Federal function was transferred to the organization by law, provided the employee moved as a result of the transfer of function without a break in service of more than 3 days to the nonfederal organization and is reemployed by nontemporary appointment in the competitive service without a break in service of more than 30 calendar days after separation from the nonfederal organization;

(ix) Employment with the District of Columbia Government after January 1, 1980 (the date the District implemented an independent merit personnel system not tied to the Federal system), provided the person was a District employee on December 31, 1979, was converted to the District system on January 1, 1980, and is reemployed by nontemporary appointment in the competitive service without a break in service of more than 30 calendar days after separation from District employment; and

(x) Breaks that occur when a career-conditional employee leaves Federal employment to accompany a spouse or parent (if the employee is their unmarried child under 21 years of age) who is a member of the Armed Forces or a Federal civilian employee on official assignment to an overseas post of duty, provided the employee's separation from employment occurs no more than 90 calendar days prior to going overseas and reinstatement occurs while overseas or within 180 calendar days of return to the United States. Overseas posts of duty are duty locations outside the 50 States of the United States, the District of Columbia, Guam, Puerto Rico, and the Virgin Islands.

(4) *Crediting service.* An employee's creditable service must total 3 years, under the following conditions.

(i) *Work schedule.* (A) Full-time service, and part-time service on or after July 1, 1962, are counted as calendar time from the date of appointment to date of separation.

(B) Intermittent service on or after July 1, 1962 is counted as 1 day for each day an employee is in pay status, regardless of the number of hours for which the employee is actually paid on a given day. For this purpose, 780 days in pay status are equivalent to 3 years' service, but the service requirement may not be satisfied in less than 3 years of calendar time.

(C) Part-time and intermittent service before July 1, 1962, is counted based on the number of hours actually employed, including any paid leave. For this purpose, 6,240 hours of paid time are equivalent to 3 years' service, but the service requirement may not be satisfied in less than 3 years of calendar time.

(ii) *Nonpay status on the rolls and time off the rolls.* No credit is given for periods of nonpay status and time off the rolls, except under the following conditions:

(A) Credit is given for the first 30 calendar days of each period of nonpay status on the rolls during full-time employment, or during part-time employment on or after July 1, 1962. On this same basis, a seasonal employee receives credit for the first 30 calendar days of each period of nonduty/nonpay status. Nonpay status in excess of 30 days extends the 3-year waiting period by the amount of the excess;

(B) Full credit is given for periods of nonpay status and time off the rolls incident to entry into and return from military service and return from defense transfer, provided the person is reemployed in Federal service during the period of his or her statutory or regulatory restoration or reemployment rights;

(C) Full credit is given for periods of nonpay status and time off the rolls incident to transfer to and return from an international organization, provided the person is reemployed in Federal service under subpart C of part 352 of this chapter;

(D) Full credit is given for periods of nonpay status during which an employee was eligible to receive continuation of pay or injury compensation under the Office of Workers' Compensation Programs. Full credit is given for periods of time off the rolls during which an employee was eligible to re-

ceive injury compensation under the Office of Workers' Compensation Programs, provided the person is reemployed under part 353 of this chapter.

(E) Credit is given for up to 30 calendar days for time off the rolls that follows separation by reduction in force of employees who are eligible for entry on the reemployment priority list under subpart B of part 330 of this chapter, provided the person is reemployed in Federal service during the period of his or her reemployment priority;

(F) Credit is given for up to 30 calendar days for time off the rolls that follow involuntary separation without personal cause of employees who are eligible for a noncompetitive appointment based on an interchange agreement with another merit system under §6.7 of this chapter, provided the person is employed in the competitive service under the agreement during the period of his or her eligibility.

(iii) *Restoration based on unwarranted or improper actions.* (A) Based on a finding made before March 30, 1966, that a furlough, suspension, or separation was unwarranted or improper, an employee restored to duty receives full calendar time credit for the period of furlough, suspension, or separation if he or she was eligible to receive retroactive pay under 5 U.S.C. 5591–93 (formerly Pub. L. 80–623) or 5 U.S.C. 5594 (formerly Pub. L. 81–733).

(B) Based on a finding made on or after March 30, 1966, that a furlough, suspension, or separation was unwarranted or improper, an employee restored to duty receives full calendar time credit for the period of furlough, suspension, or separation for which he or she is eligible to receive back pay. If the employee is restored to duty at a date later than the original adverse action, credit for intervening periods of nonpay status or breaks in service is given in accordance with other provisions of this subsection. If the employee had been properly separated from the rolls of the agency before a finding was made that the adverse action was unwarranted or improper, the correction and additional service credit given the employee may not extend beyond the date of the proper separation.

*(iv) Intervening service.* Certain types of service that ordinarily are not creditable are counted when they intervene between two periods of creditable service without a single break in service in excess of 30 calendar days, excepted as provided in subparagraph (H) of his paragraph. Under these conditions, credit is given for periods of service:

(A) In the excepted service of the Federal executive branch, including employment in nonappropriated fund positions in or under any Federal agency;

(B) Under temporary, term, or other nonpermanent employment in the Federal competitive service;

(C) In the Senior Executive Service;

(D) In the Federal legislative branch;

(E) In the Federal judicial branch;

(F) In the armed forces;

(G) In the District of Columbia Government through December 31, 1979. For an employee on the District rolls on December 31, 1979, who converted on January 1, 1980, to the District independent personnel system, credit also is given for service between January 1, 1980, and September 25, 1980. Otherwise, service in the District of Columbia Government on or after January 1, 1980, is not creditable as intervening service; and

(H) Performed overseas by family members, as defined by § 315.608 of this chapter. Such service is creditable toward career tenure if it intervenes between two periods of creditable service without a single break in excess of 180 days.

(c) *Exceptions from service requirement.* The service requirement for career tenure does not apply to:

(1) An appointment to a position required by law to be filled on a permanent basis, or a conversion under this part while the employee is serving in such a position;

(2) An appointment from a register of a person who once completed the service requirement for career tenure;

(3) An appointment under § 315.601 of a former Canal Zone Merit System employee who completed the service requirement for career tenure under that system; or

(4) The reinstatement of a person who once completed the service requirement for career tenure.

[33 FR 12418, Sept. 4, 1968, as amended at 43 FR 34428, Aug. 4, 1978; 59 FR 68104, Dec. 30, 1994; 60 FR 53504, Oct. 16, 1995; 62 FR 63630, Dec. 2, 1997; 63 FR 57046, Oct. 26, 1998; 65 FR 78078, Dec. 14, 2000]

## § 315.202  Conversion from career-conditional to career tenure.

A career-conditional employee becomes a career employee automatically on completion of the service requirement for career tenure.

## Subpart C—Career or Career-Conditional Employment From Registers

### § 315.301  Tenure on appointment from register.

(a) Except as provided in paragraph (b) of this section, an eligible appointed from a register for other than temporary or term employment becomes a career-conditional employee.

(b) An eligible appointed from a register for other than temporary or term employment becomes a career employee when he is excepted from the service requirement for career tenure by § 315.201(c).

### § 315.302  Acquisition of competitive status.

An employee appointed as provided in § 315.301 acquires a competitive status automatically on completion of probation.

## Subpart D—Career or Career-Conditional Employment by Reinstatement

### § 315.401  Reinstatement.

(a) *Agency authority.* Subject to part 335 of this chapter and paragraph (b) of this section, an agency may appoint by reinstatement to a competitive service position a person who previously was employed under career or career-conditional appointment (or equivalent).

(b) *Time limit.* There is no time limit on the reinstatement eligibility of a preference eligible or a person who completed the service requirement for career tenure. Except as provided in

## §315.801

career or career-conditional employment under this subpart.

[33 FR 12418, Sept. 4, 1968. Redesignated at 44 FR 63080, Nov. 2, 1979]

## Subpart H—Probation on Initial Appoinment to a Competitive Position

### §315.801 Probationary period; when required.

(a) The first year of service of an employee who is given a career or career-conditional appointment under this part is a probationary period when the employee:

(1) Was appointed from a competitive list of eligibles established under subpart C of this part;

(2) Was reinstated under subpart D of this part unless during any period of service which affords a current basis for reinstatement, the employee completed a probationary period or served with competitive status under an appointment which did not require a probationary period.

(b) A person who is:

(1) Transferred under §315.501; or

(2) Promoted, demoted, or reassigned; before he completed probation is required to complete the probationary period in the new position.

(c) A person who is reinstated from the Reemployment Priority List to a position in the same agency and the same commuting area does not have to serve a new probationary period, but, if separated during probation, is required to complete the probationary period in the new position.

(d) Upon noncompetitive appointment to the competitive service under the Postal Reorganization Act (39 U.S.C. 101 et seq.), an employee of the Postal Career Service (including substitute and part-time flexible) who has not completed 1 year of Postal service, must serve the remainder of a 1-year probationary period in the new agency.

(e) A person who is appointed to the competitive service either by special appointing authority or by conversion under subparts F or G of this part serves a 1-year probationary period unless specifically exempt from probation by the authority itself.

[33 FR 12418, Sept. 4, 1968, as amended at 39 FR 962, Jan. 4, 1974; 45 FR 48365, June 27, 1980; 60 FR 54504, Oct. 16, 1995; 65 FR 14432, Mar. 17, 2000]

### §315.802 Length of probationary period; crediting service.

(a) The probationary period required by §315.801 is 1 year and may not be extended.

(b) Prior Federal civilian service (including nonappropriated fund service) counts toward completion of probation when the prior service:

(1) Is in the same agency, e.g., Department of the Army;

(2) Is in the same line of work (determined by the employee's actual duties and responsibilities); and

(3) Contains or is followed by no more than a single break in service that does not exceed 30 calendar days.

(c) Periods of absence while in a pay status count toward completion of probation. Absence in nonpay status while on the rolls (other than for compensable injury or military duty) is creditable up to a total of 22 workdays. Absence (whether on or off the rolls) due to compensable injury or military duty is creditable in full upon restoration to Federal service. Nonpay time in excess of 22 workdays extends the probationary period by an equal amount. An employee serving probation who leaves Federal service to become a volunteer with the Peace Corps or the Corporation for National and Community Service serves the remainder of the probationary period upon reinstatement provided the employee is reinstated within 90 days of termination of service as a volunteer or training for such service.

(d) The probationary period for part-time employees is computed on the basis of calendar time, in the same manner as for full-time employees. For intermittent employees, i.e., those who do not have regularly scheduled tours of duty, each day or part of a day in pay status counts as 1 day of credit toward the 260 days in a pay status required for completion of probation. (However, the probationary period cannot be completed in less than 1 year of calendar time.)

[60 FR 53504, Oct. 16, 1995]